JOSEPH VAN EMAN,

*vs.*

*SAMUEL STANCHFIELD, et al.

S. & B. agreed with O. to "assume and take up" a promissory note against the latter, which was then held by F., and at the same time, and as a part of the same transaction, agreed with F. to pay to him the said note. *Held:*—That in an action against S. & B. on the last mentioned contract, F. could recover only on proof that he was the owner of the note, or had the right to collect it by virtue of some special property therein.

Where a note payable to the order of A. is by him delivered, not endorsed, to B., the possession of the latter is not evidence of his ownership.

The general property in a note pledged as collateral security for the payment of a debt remains in the pledgor, and the lien or special property acquired by the pledgee cannot be by him separated from the debt, so that the chose in action may be owned by one man and the lien held by another.

A third party to whom such pledged note is assigned by the pledgee, cannot maintain an action to recover the amount due thereon, without proving that he also owns the debt to which it is collateral.

This is an appeal taken by the plaintiff from an order of the District Court for Hennepin County, denying a motion for a new trial after a verdict for defendants. A sufficient statement of the case will be found in the opinion of the Court.

D. A. SECOMBE for Appellant.

F. R. E. CORNELL & WM. LOCHREN for Respondents.

*Mr. Justice Berry being of kin of one of the parties, took no part in the hearing or determination of this case.

*By the Court*—WILSON, Ch. J.—In March, 1858, one S. B. Olmstead bargained to these defendants a number of pine saw logs, in consideration of which they agreed to "assume and take up" a promissory note for $1,000, which Olmstead had before made to J. and A. J. Chapman, and which was then in the hands of Alexander Ferguson. The agreement entered into with reference to the payment of the said note was reduced to writing, and is in the following words: "This agreement made and entered into this day at St. Anthony, March 18, 1858, between S. B. Olmstead of the first part, and Stanchfield and Brown, and John Dudley of the second part; whereas the party of the first part has this day sold all his logs and all the logs he controls from St. Paul to head of Lake Pepin, or that may pass St. Paul through the year 1858, except what logs of his are now in Lake Pepin boom, unto the party of the second part at the rate of four dollars and fifty cents per thousand. And it is further agreed by the party of the second part to make payment as follows, viz: first, to assume and to take up the following note given by S. B. Olmstead to J. and A. J. Chapman, dated August 13, 1857, for one thousand dollars, made payable at the banking house of Bostwick, Pease & Co., now in the hands of Alexander Ferguson; also the interest on said note, and the same to be paid on the first day of December, 1858. It is further agreed after the above note has been paid, if there is any more due the first party from the second party, it shall be paid as follows, viz: in logs delivered at Red Wing, not rafted, at the rate of seven dollars per thousand, or at the foot of Lake Pepin boom, rafted, with plugs and lockdowns, at the rate of eight dollars per thousand, the same to be put in running order with oar stems and oar blades, &c. It is further agreed that if the second party does not receive of the first party logs enough to cover the first named payment of note

and interest, that the party shall turn out to the party of the second part logs enough at other places to cover the full amount of said note and interest due December, 1858.

S. B. OLMSTEAD,

STANCHFIELD & BROWN,

JOHN DUDLEY.

Witness,

GEO. S. BRADFORD,

ALEXANDER FERGUSON."

At the same time, and as a part of the same transaction, the defendants executed and delivered to Ferguson an agreement in writing in the following words: "Whereas, S. B. Olmstead has this day, March 18, 1858, sold and entered into a contract with Stanchfield & Brown, and John Dudley, for all his logs from St. Paul to head of Lake Pepin. The said Stanchfield & Brown and John Dudley have agreed to assume and pay a certain note given to A. and A. J. Chapman by S. B. Olmstead, now held by Alexander Ferguson, for $1,000. And we have agreed to pay the said note to Alexander Ferguson on the 1st day of December, 1858, without interest after this date (March 18, 1858), to Dec. 1, 1858; and if not paid at maturity, we agree to pay the said Ferguson one per cent. per month until paid.

STANCHFIELD & BROWN,

JOHN DUDLEY."

The first above mentioned agreement and the Olmstead note of one thousand dollars there referred to, were assigned by Ferguson to the plaintiff, July 7th, 1862. The assignment was in writing, under seal, and reads:

"For value received I hereby sell, transfer and assign unto Joseph Van Eman, the original contract, of which the within is a copy, together with the $1,000 note therein mentioned, and all my right, title and interest therein and thereto. In

vol. xiii.—7

witness whereof I have hereunto set my hand and seal this July 7th, 1862.          ALEXANDER FERGUSON. [SEAL.]

In presence of D. A. Secombe."

The second above mentioned agreement, and the Olmstead note, were by Ferguson assigned to plaintiff August 14th, 1861, which assignment was also in writing, under seal, and in the following language :

" For value received I hereby sell, assign and transfer unto Joseph Van Eman, the above contract, and the note of $1,000 therein mentioned, and all my right, title and interest therein and thereto, and I hereby authorize the said Van Eman, in my name, or otherwise, but at his own expense, to sue for and collect the money due upon the same."

ALEXANDER FERGUSON. [SEAL.]

Dated August 14th, 1861.

In presence of D. A. Secombe."

This action is brought to recover the amount of the Olmstead note, with interest.   One issue in the case is the ownership of this note by the plaintiff.   It appears that it was made payable to the order of J. and A. J. Chapman, and that in December, 1858, it was by the payees delivered, not endorsed, to Ferguson as collateral security for the payment of a note held by him against them for the sum of $444.

It does not appear that this last mentioned note was, or ever has been, sold or legally transferred to the plaintiff by Ferguson. There is some evidence from which, at first sight, it would seem a jury might infer such transfer, but on looking at all the evidence on this point, we think it entirely insufficient to justify such inference.

The written assignments above set out seem to contain the entire contract between the parties in the premises : there is not a word of evidence that there was any other or further

agreement, and these assignments make no reference whatever to the note to which the Olmstead note was collateral.

Ferguson, in testimony, says: "I have not now got the note to which this $1,000 note was collateral. I cannot swear positively that I delivered it to Van Eman. I think I did. If I ever delivered that note to Van Eman, it was in August, 1861, but I have no recollection on the subject." On cross-examination on the same subject he says (in answer to the question: "At the time you delivered the papers to Van Eman, what took place between you?) "Van Eman gave me his note for $100. This was not the only consideration for the assignment. I owed Van Eman something on account. I cannot tell how much. I have not now got the note which he gave me; I don't know where it is; the last I knew any thing of it, he had it. I assigned the agreement and he gave me the note." Mr. Secombe, who seems to have acted as counsel for both Ferguson and plaintiff in making the assignment, testified: "Since hearing the testimony of Alexander Ferguson in relation to the Chapman and Moulton note (to which the Olmstead note was collateral), I now recollect distinctly that at the time the first assignment was made by Ferguson to the plaintiff, Ferguson delivered this note to the plaintiff, with the Olmstead note, and that the plaintiff asked me if I wished to take this note for the purposes of the suit; and I told him that I did not, and the plaintiff kept it." This is the only evidence that has any tendency to show a transfer of the Chapman and Moulton note to the plaintiff, and taking it altogether it fails to make a *prima facie* case.

Whether this note was at the time of the assignment left with plaintiff, is not very material, but whether the legal title was passed to the plaintiff, is a question very important in its bearing on the rights of the parties. The burden was on the plaintiff to show such transfer. The evidence of the transfer,

if it ever was made, was known to him, and peculiarly within his reach, and the necessity of such proof was made prominent on the trial. The plaintiff, Secombe and Ferguson, are, so far as it appears, the only persons who were witnesses of the transaction between the former and the latter. The two last named were sworn as witnesses on the trial, and their attention called to this matter, yet neither intimated that there was a sale or legal transfer of said note, or any intention or attempt to sell or transfer it to the plaintiff. The plaintiff was not examined as a witness in the case, and there was no attempt to show his possession of the note or its loss. This silence, under the circumstances, is almost conclusive negative evidence against the probability of such transfer, which the fact that the note was, or may have been at the time, delivered to the plaintiff, does not countervail.

It cannot be presumed that under such circumstances the plaintiff would have remained silent if he could have spoken with advantage to his case. The burden of proof was on him, and he has not offered evidence sufficient to shift it. A verdict having been rendered for the defendants, the plaintiff moved the Court for a new trial, which was denied, and the plaintiff removed the cause to this Court by appeal from the order. There were many questions raised in the trial, and to the charge of the Court many exceptions were taken. The motion for a new trial was denied on the ground that the plaintiff, not appearing to be the owner of the Chapman and Moulton note, had not such an interest in the Olmstead note as to authorize him to sue for and collect it. We see no error in this, and therefore do not feel called upon to examine any other question raised. The Olmstead note was overdue when assigned to the plaintiff, and had never been endorsed by the person to whose order it was made payable. Under these circumstances plaintiff took it subject to the rights or equities

of any other party thereto, and its possession was not evidence of ownership. The Olmstead note having been pledged to Ferguson as collateral to the Chapman and Moulton note, the general property in the former remained in Chapman, the pledgor—Ferguson only acquiring a special property. The lien or special property which the pawnee has in the pawn, is by reason of his ownership of the debt for which he holds it as security. He cannot, therefore, separate the lien from the debt, so that the chose in action may be owned by one man and the lien held by another. The lien is not a distinct and independent right of property capable of being transferred or assigned. *Edwards on Bailments*, 210–211. The plaintiff not showing himself owner of the debt, therefore failed to establish his title to the collateral. But it is argued that " this being an action on a special contract to pay the Olmstead note to Ferguson, and not an action on the note between the parties thereto, it is immaterial to the defendants whether or not Ferguson or the plaintiff ever lawfully owned the note." This view cannot be sustained. The defendants' obligation to Olmstead, to "assume and take up" his note, can only be discharged by paying to some person authorized to collect it. Ferguson or his assignee has no claim against the defendants, except by reason of a general or special property in the note, for it will hardly be claimed that it was intended by the agreement to give him, without consideration, $1,000. If he is the owner or pledgee of the note, he could maintain an action on it, and if he is not, he is not entitled to recover, and the defendants would be liable to the owner, notwithstanding a judgment in his favor. There are no facts in the case to show that the defendants are estopped from questioning the title of the plaintiff or his grantor, for it does not appear that either has lost any rights by a reliance on their acts or contract, and where the rights of the parties are unchanged there is no estoppel.

Order appealed from affirmed.