## G. W. WILFONG *vs.* J. H. PATY.

On Appeal from the Chancellor.

April Term, 1887.

Judd, C.J., McCully, Preston and Bickerton, JJ. Fornander, J., absent.

J. H. P. and S. P. sold to G. W. W. a sugar cane planting enterprise for $40,000. It was agreed that G. W. W. should give to the vendors a mortgage over the property conveyed, together with twenty-six shares of stock in a corporation then held by another firm as security for W.'s note for $1000. The mortgage was executed but contained no reference to the shares.

Subsequently W. surrendered the mortgaged property and his equity of redemption therein to P. and P. J. H. P. had in the meantime taken up W.'s note and the shares were transferred to him.

W. filed his bill to redeem the shares.

Held, that there was a valid charge in favor of P. and P. upon the shares, but that the effect of the deed from W. to P. and P. was to release such charge.

*Decree appealed from sustained with a variation as to time of payment.*

## Opinion of the Court.

After full consideration of the arguments of counsel in this case, having read the pleadings and evidence, we are of opinion that the conclusions arrived at by the Chancellor in his decision, rendered on the 26th March, 1887, should be sustained with the following exception : We are of the opinion that there was a valid charge in favor of Parker and Paty, upon the shares of the Hawaiian Agricultural Company, but that the effect of the deed of Wilfong to Paty and Parker, dated 31st March, 1884, was a release of such charge.

The decree appealed from is sustained except that payment by plaintiff should be made in thirty days instead of ninety days.

*S. B. Dole*, for plaintiff.

*F. M. Hatch*, for defendant.

---

## Opinion of the Chancellor Appealed From.

This is a bill in equity to redeem certain shares of stock held by defendant as a pledge and for an account, etc.

A succinct narrative of the transactions between the parties, derived from the evidence, is as follows :

On the 1st day of July, 1878, G. W. Wilfong, being the owner of twenty-six shares of the capital stock (par value being $500 each), of the Hawaiian Agricultural Company, a domestic corporation, pledged the same to C. Brewer & Company, as collateral security for the payment of his note to them for $6000, payable in two years with interest at ten per cent. per annum. The stock was pledged by an instrument in writing, the certificates thereof being delivered to C. Brewer & Co., and the fact noted on the stock-book of the Hawaiian Agricultural Company.

On the 27th December, 1879, John H. Paty and Samuel Parker, being then the owners of a certain tract of land and certain other property in Hamakua, Hawaii, constituting a sugar

cane planting enterprise, agreed in writing to sell the same to Mr. Wilfong for the sum of $40,000, who agreed to give to Parker and Paty a mortgage upon said premises to secure the purchase price, and to include in the said mortgage the twenty-six shares of Hawaiian Agricultural Co.'s stock, then held by C. Brewer & Co., as security for Wilfong's note. On the 14th January, 1880, the conveyance from Parker and Paty to Wilfong, and the mortgage from Wilfong back to them, were executed and shortly thereafter delivered. The mortgage contains no reference to this stock. Paty says it was omitted by mistake of the conveyancer, as he believes, and Wilfong does not undertake to say why it was omitted. Meanwhile Wilfong took possession of the plantation and carried it on, Messrs. Schaefer & Co. acting as his agents, and advancing the necessary funds and receiving the sugar. Messrs. Paty and Parker were responsible to Schaefer & Co. for these advances. In April, 1880, Mr. Paty sent to Mr. Wilfong the following letter for him to sign:

"HONOKAA, April, 1880.

"*Messrs. C. Brewer & Co., Honolulu.*

"GENTLEMEN: I have given to Messrs. Parker and Paty a mortgage which includes the twenty-six shares of stock in the Hawaiian Agricultural Company now held by you as collateral security to my note to you of $6000. After the satisfaction of your claim against me under the said note, which bears date July 1, 1878, you are hereby authorized to deliver to said John H. Paty, one of the mortgagees, the shares remaining in your hands of the said stock named above, and his receipt therefor will be your full acquittance from further responsibility on this behalf.      Your obedient servant,      G. W. WILFONG."

Wilfong signed and dated it on the 8th April, and returned it to Paty, writing also a note to Paty of the same date, in which he says, "I have signed the enclosed letter to be forwarded to C. Brewer & Co."

In the same letter Wilfong writes to Paty, "My late letters from Kau speak in high terms of the young cane at Pahala. I feel sure that Pahala will pay, and the stock worth the face and interest on the money invested."

Nothing further was done between the parties as regards these shares until January 16, 1882, when, as C. Brewer & Co. were pressing Wilfong for the payment of the note, Mr. Paty promised Wilfong that he would take it up, which he accordingly did on the next day, paying them $6000 for the note, which was worth with interest for two years, less $520 dividends on the twenty-six shares, declared 1st January, 1882, $6680. The note was endorsed over to Paty, "without recourse," and the stock delivered to him. On the company's stock-book the transactions were noted—of C. Brewer & Co.'s release of the shares and that they were held by Mr. Paty as collateral.

On the 4th April, 1882, Paty writes to Wilfong, "I have taken up your note for $6000 at C. Brewer & Co., and will feel obliged if you will authorize them to make the requisite transfer of the shares to me. I have collected $390 for the dividend (31st March) three per cent., and have given you credit for the amount."

Under date of April 6th, Wilfong replies to Paty, acknowledging receipt of letter of April 4th, and says, "I am glad to notice you have collected $390 dividend of last quarter on H. A. Co.'s stock and hope it will be kept up, which I think it will. I am not sorry that I fought the heaving up of the Pahala Plantation, by report of such a committee as was sent up by directors." The next day, April 7th, Wilfong wrote to C. Brewer & Co.: "Please make a complete transfer of all my stock in H. A. Co. to John H. Paty.

"He writes me that he has paid you the amount of my note, $6000, and taken it up, by so doing you will oblige. Yours, etc."

On the presentation of this letter to C. Brewer & Co., they made an entry in the stock-book of the Hawaiian Agricultural Co., as respecting Wilfong's shares, "April 7, 1882, sold and transferred to J. H. Paty."

In 1884, Messrs. Parker and Paty concluded that, as the plantation conducted by Wilfong was not profitable, and as the interest and principal of the purchase money had not been paid by Wilfong, and he was owing in addition some $25,000 to the agents for advances, for which they, Parker and Paty, were responsible, they would close the affair up, to which Wilfong agreed, and he accordingly made a conveyance on March 31st to Parker and Paty of the mortgaged property. It recites:

"That, whereas said party of the first part (Wilfong) is indebted to said parties of the second part (Parker and Paty), in the sum of forty thousand dollars, according to the tenor of four promissory notes dated January 14, A. D. 1880, and is also owing the interest upon said notes, the same being secured by mortgage of even date with said notes recorded Lib. 65, fols. 26, 28, and whereas said party of the first part is unable to pay said notes, and desires to surrender to said parties of the second part all of the premises and other property secured by said mortgage. Now, therefore, in consideration aforesaid, and of one dollar," etc.

The property in this mortgage is conveyed, as well as some property subsequently acquired by Wilfong, and "also the Equity of Redemption of Wilfong."

Mr. Paty says, the object of this conveyance was to acquire ownership of the property without foreclosure of the mortgage; the enterprise was not paying and he wanted the property back. He does not think it was intended to be a full discharge of the indebtedness, but has never demanded it since. He employed Mr. Wilfong as manager of the plantation since the conveyance back, and has paid him wages, but not in full, not deducting anything on account of former indebtedness. Wilfong says the conveyance was to discharge all his indebtedness, "I was to lose my four years' work and they were to take everything, land, live stock, carts, improvements, etc. I had built houses, etc., and thus spent about $8000 on the place."

Paty says he always considered the shares in question as his, but both he and Wilfong admit that there was no conversation

about them at the time of the conveyance of the mortgaged property.

Enough of the evidence has been stated for an understanding of the case. The first question I have to decide is, whether the evidence discloses a *sale* of the twenty-six shares in the Hawaiian Agricultural Co. to Paty. The law is not disputed, as laid down by Colebrooke on Collateral Securities, Section 287, that when certificates of stock have been pledged as collateral security, and the pledgee has even gone so far as to have the stock transferred to him on the books of the company, and has received a new certificate in his own name, so as to become vested with the legal title to the stock, equity will relieve and will decree the stock to be surrendered upon payment of interest and assessments, subject to credits for dividends. Parol testimony will be received to show that the transfer, though absolute in form, was intended as collateral security only.

The cases sustain the text. *Brick vs. Brick*, 98 U. S., 514; *Newton vs. Fay*, 10 Allen, 505; *McMahon vs. Macy*, 51 N. Y., 161; *Pinkerton vs. Railroad*, 42 N. H., 424, and many other cases.

Upon the evidence above sketched, I think it is incontestable that Wilfong never intended to make an absolute sale of the stock to Paty. His correspondence shows this. Moreover, that Paty so regarded it is evident from his statement in the letter of April 4, 1882, that he had taken up the note for $6000—at C. Brewer & Co.'s—and had collected $390 for the dividend of March 31st, for which he had given credit to Wilfong. If he had bought the stock, the dividends were his and not Wilfong's. He asks in this letter that Wilfong authorize C. Brewer & Co. to make the required transfer of the shares to him. But the shares had already been delivered to him by C. Brewer & Co. when he bought the note on January 17, 1882, and I think there is no doubt that he would have been entitled to the possession of the security upon his buying the note, without any express authorization from Wilfong.

But counsel for defendant takes the position that though the shares were never absolutely sold by Wilfong to Paty, they were pledged by Wilfong to Parker and Paty as part of the security for the purchase money of the planting interest in Hamakua, and that this lien is still subsisting, and plaintiff is not entitled to redeem the shares without paying the remaining indebtedness.  This is a question of considerable difficulty.

Does the letter of Wilfong to C. Brewer & Co. of April 8, 1880 (quoted above in full), constitute a pledge of the shares to Parker and Paty ?  I think not.  The essential to the validity of a pledge, that the article should be delivered to the pledgee, does not exist in this case.  The shares remained in C. Brewer & Co.'s possession for nearly two years after this letter. · The letter was written under the impression that the mortgage of 14th January, 1880, covered these shares, and it was C. Brewer & Co.'s authority from Wilfong to deliver them to Parker and Paty, whenever the note to which they were collateral in C. Brewer & Co.'s hands should be paid.  But it did not have the effect of pledging the shares then and there to Parker and Paty.

It is possible that Parker and Paty could have, by resort to equity, enforced the agreement of December 27, 1879, wherein Wilfong agreed to mortgage the shares, and obtained a decree of specific performance; but the law is clear that where a security has been pledged for a particular obligation, the pledgee is not permitted to retain it as security for other indebtedness in the absence of a special agreement to that effect.  He must deliver it to the pledgor when the particular obligation for which it was security is discharged.  See Colebrooke, Section 97, and authorities there cited.

But after the mortgage had been made in which the shares were omitted, it stood in place of the agreement.  I am unable to find anything in the case which can be held to be a valid pledge of the shares as collateral security for the purchase money of the plantation.

The leading case of *Casey vs. Cavaroc*, 96 U. S., 467, is to the effect that in order to constitute a valid act of pledge as against

third, parties the negotiable instruments which were used as collateral security must not only have been delivered as such, but be continued in the possession of the pledgee.

I am referred by counsel for defendants to *Parshall vs. Eggert*, 54 N. Y., 18, where it was held that one who has a contract for a pledge ineffectual for want of delivery of the goods, may obtain a subsequent delivery, and thus validate the pledge, even as against an intermediate creditor.

In the apparent conflict of authority between the New York Court of Appeals and the Supreme Court of the United States, I prefer to adopt the views of the latter. In the case before me there are no rights of third parties intervening to invalidate the pledge.

In the case before me, the possession of the shares has remained continually in Paty, after he paid the note on the 17th January, 1882. But the shares were transferred to his possession when they were actually delivered, not in pursuance of· the letter of the 8th April, 1880 (in order to be in Paty's hands as additional security for the purchase money of the plantation), but by the authority of the verbal request of Wilfong to Paty on the 18th January, 1882, to take up his note to C. Brewer & Co., to receive the shares as collateral to this obligation.

But even if it were otherwise, and if I should find that the shares were so pledged, is there remaining any indebtedness of Wilfong to Parker and Paty on account of the plantation purchase, which Wilfong is bound to discharge before he can be entitled to the possession of the shares ?

The general rule is stated in *Loud vs. Lane*, 8 Pick., 518, to be thus : " When the legal title by the mortgage becomes united with the equitable title so that the owner has the whole title, the mortgage is merged and extinguished by the unity of possession."

" The question whether the mortgage is extinguished or not, rests upon the intention, actual or presumed, of the person in whom the interests are united." 1 Jones on Mortgages, Section 848.

" But if the owner has an interest in keeping these titles distinct, or if there be an intervening right between the mortgage and the equity, there is no merger." *Id.* " In fact the doctrine of merger springs from the fact that when the entire equitable and legal estate are united in the same person there can be no occasion to keep them distinct, for ordinarily it could be of no use to the owner to keep up a charge upon an estate of which he was seized in fee simple ; but if there is an outstanding, intervening title, the foundation for the merger does not exist, and as a matter of law it is so declared." *Stantons vs. Thompson*, 49 N. H., 352

In *Findlay vs. Hosmer*, 2 Conn., 353, the Court says : " And although it is true, as a general proposition, that where the mortgagee purchase of the mortgagor the equity of redemption, it will operate as a release of his debt; yet this is because a presumption arises from the nature of the transaction, that such was the intention of the parties."

From the evidence presented, I think Parker and Paty intended the mortgage debt to be extinguished by the deed of Wilfong to them of the plantation property, that which was mortgaged, and also that subsequently acquired. There was a merger. No intervening title or right exists in this case to make it their interest to keep the title distinct.

Having arrived at this conclusion, it follows that Parker and Paty are not authorized to retain the shares as security for the plantation debt, for the debt is paid. Even if the shares were validly pledged to Parker and Paty to secure the plantation indebtedness, and assuming that the mortgage is not extinguished by the deed of March 31st, 1884, the sale of the shares by Paty is irregular, for Wilfong was, by all the authorities, in the absence of a contract to the contrary, entitled to a reasonable notice of the time and place of sale, to enable him to be present and guard his interests.   Colebrooke, Section 331.

The sale should be public, and the sale to himself privately made it a breach of the good faith required between pledgor and pledgee.

But the shares are validly pledged to Paty as security for the $6000 note, and Wilfong is entitled to redeem them.

Let a reference be made to a Master to ascertain the amount of principal and interest due on the note, and the amount of dividends received by Paty, and on Wilfong's paying the balance due, he will be entitled to the possession of the shares.

Decree accordingly.

*S. B. Dole*, for plaintiffs.

*F. M. Hatch*, for defendants.