# H. H. Westinghouse *v.* German National Bank of Pitts-burg, Appellant.

*Broker—Rehypothecation of stock—Notice.*

Where an owner of stock executes upon the back of the certificate an
absolute power to sell or transfer, and delivers the certificate to a broker
as collateral security to protect the broker in carrying other stock, and the
broker rehypothecates the stock with a bank which has full knowledge
of the ownership of the stock, and of the broker's lack of authority to re-
pledge it, the bank cannot retain the stock as against the true owner.

Argued Nov. 4, 1898. Appeal, No. 119, Oct. T., 1898, by
defendant, from decree of C. P. No. 2, Allegheny Co., July T.,
1897, No. 600, on bill in equity. Before GREEN, McCOLLUM,
MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to compel the surrender of stock. Before
SHAFER, J.

The court decreed a surrender of the stock as prayed for in
the bill.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*A. M. Brown,* with him *John D. Brown,* for appellant.—When
one of two innocent persons must suffer from the acts of a third,
the one that enables the third party to do the wrong, must suf-
fer the loss : Burton's App., 93 Pa. 214.

A certificate of stock accompanied by an irrevocable power
of attorney, either filled or in blank, is, in the hands of a third
party, presumptive evidence of ownership in the holder. And

where the party in whose hands the certificate is found is a holder for value, without notice of any intervening equity, his title cannot be impeached: Souder v. Columbia Nat. Bank, 156 Pa. 374; Wood's App., 92 Pa. 379; Finney's App., 59 Pa. 400; Com. v. Watmough, 6 Whart. 117; Building Assn. v. Sendmeyer, 50 Pa. 67.

*George B. Gordon,* with him *John Dalzell* and *William Scott,* for appellee.—The law is so thoroughly established as to admit of no doubt that one who receives stocks as further security for an existing indebtedness is not a bona fide holder: Ashton's App., 73 Pa. 162; Petrie v. Clark, 11 S. & R. 388; Dupeau v. Waddinton, 6 Wharton, 220; Altoona, etc., Bank v. Dunn, 151 Pa. 232.

It is clear that the bank did not suppose that Lawrence was the owner of these certificates, and did not deal with him upon that basis. They knew that Washington was the owner of the stocks, and took the chances of Lawrence's right to make the pledge: Ryman v. Garlach, 153 Pa. 197; Leiper's App., 108 Pa. 377; Earl of Sheffield v. London Joint Stock Bank, L. R. 13 App. Cases, 333; Colonial Bank v. Cady, L. R. 15 App. Cases, 267; Fisher v. Brown, 104 Mass. 259; Williamson v. Brown, 15 N. Y. 354.

It was clear that Lawrence had no right to rehypothecate the stock: Act of May 25, 1878, P. L. 155; Cook on Stock & Stockholders, sec. 471.

OPINION BY MR. JUSTICE DEAN, November, 14, 1898:

The plaintiff filed this bill against defendant, to restrain it from selling or otherwise disposing of 300 shares of Westinghouse Machine Company stock, which plaintiff averred belonged to him; and praying that defendant be ordered to deliver said shares of stock to plaintiff.

The court below found as facts: That A. J. Lawrence, in 1891 and five years thereafter, was a broker and dealer in stocks in Pittsburg, and had an arrangement with the German National Bank by which he had a credit of $25,000, the credit being secured by his note accompanied by collateral which last was to be changed from time to time, as might be agreed upon between them. Lawrence had been purchasing and carrying stocks for

Westinghouse, and in June, 1893, was so doing when he demanded of Westinghouse cash or more collateral to protect the stocks; in response Westinghouse delivered to him the 300 shares of machine company stock; they were in three certificates, each for 100 shares, each in name of Westinghouse, with the blank power of attorney for sale on back of them, duly executed by him; for them, Lawrence delivered to Westinghouse a receipt, "As additional collateral security on 630 shares of Westinghouse Air Brake Co. and 1,000 shares of Philadelphia Company we are carrying for his account." On the same day Lawrence delivered the 300 shares to the German National Bank, as additional collateral for his indebtedness to the bank, which had an agreement with him, that this stock should be held by the bank as collateral for any past or future indebtedness of Lawrence. The bank knew, when the stock was pledged by Lawrence, that it belonged to Westinghouse.

It is not questioned, that the 300 shares of machine company stock belonged to Westinghouse; when he delivered them to Lawrence they were only pledged as additional collateral security to protect him in carrying his purchases for Westinghouse. The power to transfer on the back of the certificate, it is true, indicated to all parties without notice, an ownership in Lawrence; and any one dealing with Lawrence concerning them, could have, in good faith safely relied on this mark of ownership, as a protection against any claim of the owner; for under such circumstances, the owner, by executing an absolute power to sell or transfer, could not assert a claim against a bona fide holder. While the act of May 25, 1878, absolutely forbids a broker to rehypothecate stocks deposited with him in pledge, without the consent of the owner, there was nothing on the face of these certificates to indicate that Lawrence was not the owner; in fact, the power of attorney pointed to him as the owner. It is argued that even if Westinghouse did not expressly consent, that Lawrence should repledge them to defendant as collateral security on his general account yet that consent, from the course of business, is plainly to be implied. This conclusion does not follow from the facts. He pledged them to Lawrence to secure Lawrence, who, so far as the evidence shows, may at the time have been amply able to hold them and furnish the money himself that was needed to carry the other

stocks bought for Westinghouse's account; many brokers are possessed of sufficient capital to do so.  But however this may be, the court below does not find there was any such implied consent.  But it does find on ample evidence, that the German National Bank when it accepted the stock as collateral security on Lawrence's general credit account, had full knowledge that they belonged to Westinghouse; and so far as the record shows, it also knew Lawrence had not the consent of Westinghouse to repledge them.  This knowledge on the part of the bank is affirmatively proved.  It would not have been implied, had nothing more appeared, than the fact that Lawrence, the apparent owner, had pledged them for his own account.  Westinghouse had put it in the power of his broker to do this, and would not have been heard to complain.  But when the bank actually knew, notwithstanding what appeared on the certificates, that the ownership was still in Westinghouse, it was bound to inquire of the owner, whether there was authority in the broker to repledge.  Not having done so, it cannot now claim that the owner's right is barred.  It is so held by all our cases.

The decree is affirmed and appeal dismissed at costs of appellant.