TSUNEHIKO OKADA, KINZABURO ITO AND JIHA-
  CHIRO  TSURUDA  *v.*  KENJU  AKAHOSHI,
  GEORGE S. KAYA, J. D. FLINT, AKAHOSHI
  DRUGS, LIMITED, AN HAWAIIAN CORPORA-
  TION, AND KAUAI SAVINGS DEVELOPMENT
  COMPANY, LIMITED, AN HAWAIIAN COR-
  PORATION.

No. 1684.

APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT.
HON. J. J. BANKS, JUDGE.

ARGUED JANUARY 11, 1927.          DECIDED APRIL 25, 1927.

PERRY, C. J., PARSONS, J., AND CIRCUIT JUDGE CRISTY
IN PLACE OF BANKS, J., DISQUALIFIED.

PLEDGE—*right of redemption after unauthorized private sale without
  notice to pledgor.*

  In the absence of agreement to the contrary a pledgee is with-
  out authority to sell pledged securities at private sale or with-

Opinion of the Court.

out notice to the pledgor of the time and place of sale. An unauthorized private sale of such securities or a sale of the same without notice to the pledgor, notice not having been waived by the pledgor, does not foreclose the pledgor's right to redeem said securities.

SAME—*right of redemption after unauthorized sale, before default, to purchaser with notice.*

Sale by pledgee, through a broker, of shares of corporation stock pledged to secure a loan repayable, by agreement, in installments, part of which have been paid and none of which is in arrears, to purchaser with actual or constructive notice of pledgor's interest therein, does not foreclose a pledgor's right to redeem said stock by tender or repayment of the balance of said loan according to the terms of said agreement.

SAME—*constructive notice of pledgor's rights.*

Knowledge that stock is the property of the pledgor and that it is in the hands of the pledgee as collateral security for a loan is sufficient to put a purchaser upon inquiry and to charge him with notice of the amount of said loan, the payments made thereon and the conditions upon which said stock may be redeemed.

SAME—*title acquired by purchaser with notice.*

A purchaser, before default, at pledgee's unauthorized sale of pledged stock, with notice either actual or constructive of pledgor's interest therein, acquires, at most, only the pledgee's interest in said stock.

ESTOPPEL—*claim of title by pledgor.*

An owner of stock who has indorsed and delivered the same to a pledgee is not thereby estopped to assert his title as against one who has purchased said stock from the pledgee with notice of pledgor's rights therein.

PLEADING—*evidence—conspiracy.*

Where the gravamen of a complaint is not conspiracy the allegation of conspiracy may be disregarded and recovery had irrespective of said allegation in case the petitioner is able otherwise to show the actionable participation of the respondent in the matters charged.

OPINION OF THE COURT BY PARSONS, J.

This is a suit in equity, before us upon appeal from a decree of the circuit judge dismissing petitioners' bill

of complaint and awarding costs to the respondents. The bill prays among other things, in effect, that the respondent George S. Kaya and the Kauai Savings Development Company, Limited, be enjoined from voting or exercising their control over nineteen shares of stock of the Akahoshi Drugs, Limited, alleged to belong to T. Okada; that respondents Akahoshi, Kaya and Akahoshi Drugs, Limited, be enjoined from holding a meeting of Akahoshi Drugs, Limited, until the ownership of certain fifty-nine shares of its stock shall have been determined; that the respondent J. D. Flint be required to retransfer to complainant T. Okada a certificate of twenty shares of stock of the Akahoshi Drugs, Limited, therein alleged to have been fraudulently transferred to the said J. D. Flint; that the respondent Kauai Savings Development Company, Limited, be ordered to transfer to the said T. Okada the nineteen shares of stock above referred to upon the payment by him to the Kauai Savings Development Company, Limited, of principal and interest due upon the same; and furthermore that said Kauai Savings Development Company, Limited, be ordered to deliver to the said Okada the shares of stock alleged to have been sold to J. D. Flint upon payment by said Okada to said Kauai Savings Development Company, Limited, of the balance due for principal and interest under a tanamoshi loan described in said complaint.

The case was tried below after issue joined upon petitioners' bill, joint and several answer and cross-bill of respondents George S. Kaya, Akahoshi Drugs, Limited, and Kauai Savings Development Company, Limited, separate answer of J. D. Flint, petitioners' answer to cross-bill and the replication of the four respondents last above named. The affirmative relief prayed in the cross-bill, except as above set forth, is not covered by decree and respondents have taken no cross-appeal.

. The decision of the trial judge divides the case into four branches, each one of which is discussed and decided separately. Appellants' specifications of error are to the first and fourth divisions of the decision and to the decree only.

Evidence was introduced tending to show among other things that in August, 1924, complainants Okada and Tsuruda, desiring to purchase the Akahoshi drug store and not having sufficient funds to do so, called upon respondent George S. Kaya to join them in the venture and to obtain loans sufficient to finance the same. Later petitioner Ito joined the three hereinabove named as one of the agreed purchasers of said store. There is evidence tending to show that the plan of the four persons last above named was to obtain loans from the Kauai Savings Development Company, Limited, with which to make the first and second payments on account of said business, then to incorporate the business and to hypothecate the stock thereafter to be issued to the parties named in proportion to their payments as security for said loans.

The specifications of error above referred to narrow the issues in this court and under them it is not necessary to review the details of the Ito and Tsuruda transactions, which will therefore be omitted from this statement.

On September 3, 1924, respondent Kenju Akahoshi entered into a written agreement (petitioners' exhibit H) with complainant Tsunehiko Okada for the sale of the former's drug business, furniture, fixtures, equipment, goods, wares, merchandise, lease and good will, known as the Akahoshi drug store, for $17,000, of which amount $2000 was payable upon execution of said agreement and $3000 on or before September 25, 1924. Bills payable aggregating approximately $6000 and amounts due

on bills of lading approximating $1000 were to be ascertained by audit, assumed and paid by the vendee and deducted from the agreed purchase price. The balance of the purchase price after the payments and deductions above named was to be paid by the vendee with interest on or before September 3, 1925.

The evidence further tends to show the following facts: On or about September 5, 1924, respondent George S. Kaya at the request of petitioner T. Okada borrowed from the Kauai Savings Development Company, Limited, of which corporation Kaya was secretary and manager, the sum of $1000 on behalf of Okada, which amount with $1000 advanced by Okada was to be turned over to Akahoshi as a first payment under said agreement. These two last-named amounts, as evidenced by Akahoshi's receipts (exhibits I and J), were paid respectively on September 6 and 12, 1924. On or about September 30, 1924, Okada obtained from a loan club conducted by the Kauai Savings Development Company, Limited, the sum of $856.50, for which he obligated himself to repay $1000 in graduated installments, with interest, extending over a period of thirty months. This loan scheme is referred to by petitioners as a tanamoshi. Whether or not it possessed all the features of a tanamoshi need not be determined. The amount thus obtained was paid in the form of a draft drawn by the Kauai Savings Development Company, Limited, on the Bank of Bishop & Company, Limited, to the order of Okada, who indorsed the same together with another draft in the sum of $143.50, similarly drawn, and returned the two drafts so indorsed to the Kauai Savings Development Company, Limited, in payment of his then existing indebtedness of $1000 above referred to. On or about the same day (September 30, 1924) Okada, upon request, executed to the Kauai Savings Develop-

ment Company, Limited, his demand promissory note for $1000 and interest, secured by a pledge of his savings account as security for the payment of his so-called tanamoshi loan. Neither note nor pledge contained any reference to stock in Akahoshi Drugs, Limited.

On October 1, 1924, a certificate of incorporation, upon articles theretofore filed, was issued to the Akahoshi Drugs, Limited, the corporation formed in furtherance of the plan hereinabove outlined, which corporation was thereby capitalized at $10,000, divided into one hundred shares of a par value of $100 each. Thereafter a certificate for twenty shares of said stock was issued to Okada who, upon Kaya's request, indorsed the same and delivered it to the Kauai Savings Development Company, Limited, as further security for his then so-called tanamoshi indebtedness. So far as the evidence discloses there was no written collateral agreement pledging the stock last above named and no oral agreement for a private sale of the same either before or after default and no waiver of notice of time and place of sale. As above stated, the only property named in exhibit D, as security for the note which forms a part of said exhibit, is Okada's savings account. Meanwhile Okada's installments were being regularly paid from his salary as manager of said Akahoshi Drugs, Limited. On or about June 8, 1925, after $420 had been so paid and when a balance of $580 remained to be paid upon installments not yet due, Kaya made demand upon Okada for payment of $1000, the entire principal of the latter's note (exhibit D) of September 30, 1924, under threat of sale of Okada's stock in the event of refusal. The demand was refused. Thereupon the Kauai Savings Development Company, Limited, through a stockbroker, at private sale and without prior notification to Okada, so far as the evidence discloses, sold said stock to the respondent

J. D. Flint for $2000 or $2010 (see respondents' exhibit 8 and tr. p. 103). Okada was thereupon given an account by the Kauai Savings Development Company, Limited, wherein he was credited with $2000, the proceeds of said sale, plus $424, cash theretofore paid by him, and charged $1000 principal upon said demand note of September 30, 1924 (exhibit D), plus forty cents for stamp and $10 commission upon said sale of stock, and he was tendered the balance, $1413.60, which tender he refused to accept.

Offers of payment of installments, payable under the original agreement and at dates subsequent to June 8, 1925, when due, have been made by Okada to the Kauai Savings Development Company, Limited, and have been refused by said company on the ground that Okada's account has been closed by the above-named sale, by the credit to Okada's account of the balance of his indebtedness and by the tender to Okada of the overplus realized from said sale.

Treating the foregoing branch of the controversy under a separate paragraph marked "first," the trial judge in his decision said: "Considering the transaction involving the one thousand dollar loan of September 30, 1924, to petitioner Tsunehiko Okada, such loan having been secured by the hypothecation of twenty shares of the capital stock of Akahoshi Drugs, Limited, while I am convinced that the understanding between the petitioner Okada and the respondents Kauai Savings Development Company, Limited, and George S. Kaya, was that the loan was repayable in installments, none of which were in arrears when the hypothecated stock was sold and that the sale of the stock was probably a wrongful act, I am not convinced that there was any conspiracy as alleged in the complaint between the respondent J. D. Flint and the respondent George S.

Kaya, or anyone else, to cheat and defraud the petitioner Okada. Respondent Flint, under the evidence, had no knowledge of how the note was to be repaid, and I believe and find that he was an innocent purchaser of the stock. Petitioners are therefore entitled to no relief on this branch or cause of action."

It is upon the above-quoted part of the decision that the petitioners base their first specification of error.

The testimony above summarized as to the circumstances under which Okada's stock was sold, taken in connection with the entire evidence in the case, shows said sale to have been a wrongful one (a) because said sale was predicated upon a demand on the pledgor and a refusal by him to pay $1000 when his entire debt amounted to but $580; (b) because said sale was a sale of stock theretofore pledged and then held as collateral for a debt payable in installments, none of which was in arrears—the agreement of pledgor and pledgee containing no provision for sale before default; (c) because said sale was a private sale, not authorized by agreement of the parties (Jones, Collateral Securities, 3d ed., §603; *Diller* v. *Brubaker,* 52 Pa. St. 498. See also *Wilfong* v. *Paty,* 7 Haw. 120); (d) because said sale was made without notice to the pledgor of the time and place of the same, such notice not having been waived by agreement (*Diller* v. *Brubaker, supra*).

Said sale having been a wrongful one and in contravention of the rights of the pledgor the purchaser acquired, at most, only such interest in the pledged stock as the pledgee possessed (a) if said purchaser had actual notice of the pledgor's rights in the premises or (b) if said purchaser had knowledge of facts sufficient to put him upon inquiry, which by the exercise of ordinary prudence and diligence would have apprised him of the pledgor's equities in the stock above named.

"Where a subsequent purchaser has actual notice that the property in question was incumbered or affected he is charged constructively with notice of all the facts and instruments to the knowledge of which he would have been led by an inquiry into the encumbrance or other circumstance affecting the property of which he had notice." *Diehl* v. *Middle States Loan, Building & Construction Co.,* 77 S. E. (W. Va.) 549, 551. See also *Reed* v. *Gannon,* 50 N. Y. 345; *Harding* v. *Eldridge,* 186 Mass. 39, 71 N. E. 115; 31 Cyc. 883.

The transcript discloses sufficient undisputed testimony to require a finding that Mr. Flint at the time of the attempted purchase above named knew that the stock offered for sale as above set forth was Okada's stock and that it was held by the Kauai Savings Development Company, Limited, as collateral security.  This knowledge alone was sufficient to put him on inquiry: (a) as to the terms of the collateral agreement between Okada and the Kauai Savings Development Company, Limited,  (b) as to the payments made on account by Okada,  (c) as to the amounts remaining unpaid thereon and their due dates,  (d) as to whether or not Okada was in default,  (e) as to the Kauai Savings Development Company's authority, if any, to dispose of the stock at private sale or at all, except by way of assignment of the pledgee's interest therein together with the debt thereby secured, and  (f) as to whether or not Okada was given notice or waived notice of the time and place of said sale.

Added to Mr. Flint's knowledge that Okada owned the stock and that it was held by the Kauai Savings Development Company, Limited, as collateral only are other circumstances which, taken in connection therewith, defeat his plea that he was an innocent purchaser of said stock, namely: Mr. Flint as an attorney at law had

acted professionally on different occasions for Kaya, for the Kauai Savings Development Company, Limited, and for the Akahoshi Drugs, Limited, for which last-named concern he had obtained the certificate of incorporation hereinabove referred to and for which service he had received as part of his fee one share of corporate stock in said company; he is familiar with the loan system of the Kauai Savings Development Company, Limited, having read their book on the subject and having himself deposited money in conformity with their plan; and he knows that money cannot be borrowed under this plan by anyone not a member of the loan club. He is also familiar with the last-named company's form of note and collateral agreement but he did not ask to see any note or agreement in the present case nor did he, so far as the evidence discloses, inquire as to any of the matters in this paragraph set forth, though he was aware of the fact that trouble existed between Kaya, on the one hand, and Okada, Tsuruda and Ito on the other, with reference to the affairs of the Akahoshi Drugs, Limited. If he had examined the note he would have found that the stock in question was not pledged by it and further inquiry would have disclosed that it was pledged under a separate agreement permitting payment in installments and not authorizing a private sale.

The rule of estoppel invoked by respondents against a person who has clothed another with the indicia of ownership of property is operative only in favor of an innocent third person who has thereby been led into dealing with such apparent owner. "The doctrine that the owner of shares is estopped to assert his title as against a purchaser or pledgee from one whom he has clothed with apparent title or authority clearly does not apply in favor of purchasers or pledgees who have actual notice that the apparent title or authority is

not real. Nor does the doctrine apply where the form or terms of the indorsement on the certificate or the other circumstances are sufficient to put the purchaser or pledgee upon inquiry." 6 Fletcher's Cyc. Corp., Sec. 3854, p. 6488. See *Davis* v. *Finch,* 236 Fed. 89; *Westinghouse* v. *German Nat. Bank,* 188 Pa. St. 630, 41 Atl. 734, 196 Pa. St. 249, 46 Atl. 380.

Transfer of the pledge herein is held to be transfer of the debt for the reason that in the circumstances hereinabove set forth the chose in action cannot be owned by one person and the lien by another. See *Van Eman* v. *Stanchfield,* 13 Minn. 75.

The alleged sale of said stock to J. D. Flint, having been wrongful, irregular and invalid in the particulars hereinabove set forth, was ineffectual except as an assignment to the said J. D. Flint of the pledgee's interest in said pledge and the debt thereby secured.

There having been no default in the payment of any installment of the debt when due and said pledge being redeemable upon payment of said debt, it is further held that the said Okada is legally entitled to the return of said stock upon payment of said debt as provided in said tanamoshi agreement.

Although petitioners' bill in equity contains a confederating clause in the form of an allegation that certain of the respondents therein named "combined, confederated and conspired together to cheat and defraud the said Tsunehiko Okada out of the sum of four hundred twenty dollars ($420.00) and interest, so paid by him to said tanamoshi fund as aforesaid, and to cheat and defraud the said Tsunehiko Okada out of his twenty shares of stock in said Akahoshi Drugs, Limited, so deposited by said Tsunehiko Okada with said Kauai Savings Development Company, Limited, as aforesaid," it was not necessary for petitioners to prove such con-

spiracy further than to connect the respondents named with the acts set forth in this opinion, conspiracy being no part of the cause of action set forth in said bill of complaint. "The allegation that there was a conspiracy to commit the fraud does not affect the substantial ground of action. The gravamen is fraud and damage, and not the conspiracy. The means by which a fraud is accomplished are immaterial, except so far as they tend, in connection with the damage suffered, to show an actionable injury. The allegation and proof of a conspiracy in an action of this character" (the action in the case cited was for damages for fraud and deceit) "is only important to connect a defendant with the transaction, and to charge him with the acts and declarations of his co-conspirators, where otherwise he could not have been implicated. But a mere conspiracy to commit a fraud is never of itself a cause of action, and an allegation of conspiracy may be wholly disregarded, and a recovery had, irrespective of such allegation, in case the plaintiff is able otherwise to show the guilty participation of the defendant. In other words, the principles which govern an action for fraud and deceit are the same, whether the fraud is alleged to have originated in a conspiracy or to have been solely committed by ·a defendant without aid or co-operation." *Brackett v. Griswold,* 112 N. Y. 454, 466, 20 N. E. 376, 379. See 27 C. J. 43 and *Foster v. O'Farrell,* 225 Pac. (Colo.) 217. The principle last above set·forth is equally applicable to a proceeding in equity.

The appellants' second specification of error is to the trial judge's finding and decision, in what the trial judge terms the fourth branch of the controversy. The petitioners' claim, set forth in paragraph XIV of their complaint, is as follows: "That on or about the 13th day of May, 1925, the said Tsunehiko Okada was the owner of

a certificate for nineteen shares of the capital stock of said Akahoshi Drugs, Limited, in addition to the twenty shares above referred to. That on said last mentioned date, said Tsunehiko Okada borrowed from said Kauai Savings Development Company, Limited, the sum of two thousand dollars ($2,000.00) giving his promissory note therefor, with interest, payable on demand, and to secure the payment of said promissory note, the said Tsunehiko Okada deposited with said Kauai Savings Development Company, Limited, as collateral security, his certificate of stock of nineteen shares in said Akahoshi Drugs, Limited. That on the 28th day of June, 1925, said Tsunehiko Okada tendered to the said Kauai Savings Development Company, Limited, the sum of two thousand thirty-four dollars ($2,034.00) the same being the amount of principal and interest due on said promissory note and thereupon demanded the return to him of said certificate for nineteen shares of stock. That the said George S. Kaya refused to accept the said tender and refused to deliver to the said Tsunehiko Okada the said shares of stock and the said Tsunehiko Okada believes, and therefore, alleges the fact to be, that the said George S. Kaya, unlawfully and fraudulently intends to claim the said nineteen shares of stock as his own and to vote the same at the meeting of the Akahoshi Drugs, Limited, so to be held as aforesaid and that the said Tsunehiko Okada has been compelled to file his action in replevin in the circuit court of the first judicial circuit for the recovery of the said nineteen shares of stock."

The respondents in their answer deny the allegation contained in paragraph XIV of petitioners' bill of complaint except as to the pendency of an action of replevin to recover possession of said nineteen shares of stock. They further deny that there was ever issued to Okada a certificate for nineteen shares of said stock, that Okada

borrowed from the Kauai Savings Development Company, Limited, the sum of $2000 or that said Okada deposited with the said Kauai Savings Development Company, Limited, as collateral security, his certificate for nineteen shares of stock in said company. The trial judge found that on this branch of the controversy the evidence preponderated in favor of the respondent Kaya and not against him and refused the relief prayed.

We find that there is ample evidence to support the findings of fact in division four of the decision of the trial judge. In this particular there was evidence before the trial judge that Kaya himself wished a loan of $2000 to enable him to become a stockholder of Akahoshi Drugs, Limited; that because of his official connection with the Kauai Savings Development Company, Limited, he did not wish to deposit his own note for the sum but in lieu thereof obtained and deposited Okada's note dated September 25, 1924 (part of respondents' exhibit 6), therefor; that the $2000 thus obtained was in the form of a draft (respondents' exhibit 5), delivered to Akahoshi on account of the second payment of $3000 for Akahoshi's drug business; that thereafter a certificate for twenty shares of stock of Akahoshi Drugs, Limited, was issued to Kaya, which he in turn pledged as security for the payment of Okada's note (in evidence as respondents' exhibit 6); that in June, 1925, Kaya paid Okada's last-named note, which, with said collateral agreement or pledge, was returned to Kaya; that Kaya then tore into several pieces said note and collateral agreement but afterwards pasted them together. The books of the Kauai Savings Development Company, Limited (exhibit 7), and Mr. Asch's testimony, as found by the trial judge, support Kaya's testimony that the loan was made and that Okada's note was executed in September, 1924, and that the latter was secured by twenty shares of

stock standing in the name of Kaya. The books also support the testimony that the note was paid in June, 1925. Okada does not deny or account for the execution of his note of $2000 of September 25, 1924, and does not produce primary or sufficient secondary proof of the alleged note of May 13, 1925, nor of his ownership at any time of a certificate of nineteen shares of the capital stock of Akahoshi Drugs, Limited.

We are of the opinion that upon payment into court by petitioner Okada on account of respondent J. D. Flint of the amount remaining unpaid upon Okada's so-called tanamoshi loan and interest the respondent J. D. Flint should be decreed to transfer and deliver to the said Okada twenty shares of the capital stock of Akahoshi Drugs, Limited.

A decree in conformity herewith will be signed upon presentation.

*J. B. Lightfoot* (*Lightfoot & Lightfoot* on the briefs) for petitioners.

*E. H. Beebe* (*Thompson, Cathcart & Beebe* on the brief) for respondents.