### CHARLES WILKIE *vs.* NATHANIEL DAY & others.

Hampshire.    Oct. 30, 1885. — Jan. 18, 1886.    FIELD & C. ALLEN, JJ.,
                                  absent.

In January, 1883, the owner of a lot of woodland executed a lease of it, for two
     years from April 1, 1883, the lessee to have the privilege of cutting and remov-
     ing the wood and timber during that time, and agreeing to pay a certain sum on
     May 1, 1883, with interest from the day of the execution of the lease.    The
     lease also contained an agreement " that the wood and timber on the described
     premises shall be held by the lessor as guaranty for the payment" of the sum
     named and interest.    At the same time, the lessee gave the plaintiff a promissory
     note for the amount named, with interest, payable on May 1, 1883.    When the
     note became due it was not paid, and the parties agreed that it might lie, on
     interest.    The lessor afterwards permitted the lessee to cut and remove some of
     the wood and timber.    *Held*, that the transaction was not a conditional sale, but
     was in the nature of a pledge.    *Held, also*, that, after the failure of the lessee, the
     lessor could acquire no additional title, as against an assignee in insolvency
     subsequently appointed, by taking possession of the wood and timber, with the
     consent of the lessee.

BILL IN EQUITY, filed August 5, 1884, against Nathaniel Day,
William Day, and Leonard Day, doing business under the firm
name of N. Day and Brothers, alleging that the plaintiff had
leased to the defendants a certain lot of land, with the privilege
of cutting wood and timber therefrom, the defendants to pay
therefor the sum of $1800, with interest, and the plaintiff to
have the right to hold the wood and timber as a guaranty for
the payment of said sum; and that the defendants had cut and
removed to their mill-yard a certain quantity of wood and tim-
ber, and had sold some of it.

The prayer of the bill was, that an injunction issue restraining
the defendants from sawing said logs, and selling or mingling
the lumber therefrom with their own lumber; and that the de-
fendants might account to the plaintiff for the lumber already
sold or mixed with other lumber, and return to the plaintiff the
balance of the same, or pay the plaintiff said sum of $1800.

On September 8, 1884, the plaintiff filed an amended bill,
making Josephus Crafts, the assignee in insolvency of the de-
fendants, a party defendant.

Hearing before *Field*, J., who found the following facts:

On January 20, 1883, the plaintiff and the original defendants
executed a lease of a parcel of land in Hatfield, described as

"the westerly portion of my wood and timber lot," and containing, by estimation, ten acres, "to hold for the term of two years from the first day of April, 1883, with the privilege of cutting and removing all the wood and timber from the same on or before April 1, 1885. And the said lessees do promise to pay the said lessor or his order on the first day of May next the sum of eighteen hundred dollars, with interest on the same from January 20, 1883, and to quit and deliver up the premises to the lessor or his attorney peaceably and quietly at the end of the term. It is agreed and understood by the parties to this instrument that the wood and timber on the above-described premises shall be held by the lessor as guaranty for the payment of the above sum of eighteen hundred dollars, and interest as above named."

A promissory note was at the same time also given by the lessees to the plaintiff for $1800, with interest, payable May 1, 1883. This note was not intended by the parties to operate as payment of the sum promised to be paid in the lease. When the note matured, the lessees requested the plaintiff to let the money lie at interest, to which he assented; and the note remains wholly unpaid. In the spring of 1884, the plaintiff began to ask for the money, or a part of it, and the lessees promised to pay it when they sold their tobacco, or in other ways could obtain the money, but never did pay any part of it. The lessees began cutting off the trees in the late fall or early winter of 1883, and cut them all off during the winter, and drew all the timber, logs, and a part of the wood, to their mill-yard, in the winter and spring. Some wood now remains piled up upon this land. Before beginning to cut off the trees in the fall, the lessees asked the plaintiff if he was willing that they should cut off the wood and timber, and he said, "Yes." The plaintiff knew at the time that they were cutting and drawing the logs to their mill-yard, and made no objection. The lessees were large manufacturers of lumber, owned a saw-mill, sold lumber and wood, and during all this time were cutting wood and timber from other lots and drawing the same to their yard.

The logs from the plaintiff's lot were mingled more or less with other logs, and were sawn with other logs by the lessees in the usual course of business, and at the time when the plaintiff

took possession, in July, 1884, a portion of the logs had been converted into sawed lumber, some into wood, and others of the logs remained unsawn; and some of this lumber had been sold by the lessees, and the wood and lumber from the plaintiff's lot had not been intentionally kept separate from other wood and lumber belonging to them, and the plaintiff had not requested the lessees to keep them separate, although the plaintiff knew generally of the disposition which the lessees were making of the logs, lumber, and wood from his land. The plaintiff intentionally permitted the lessees to cut, draw the wood and timber, and mingle them as they did with other timber, and proceed to saw them as they had done and were doing, and to sell as opportunity offered, up to the time he took possession. Some logs, lumber, and wood remain on the premises of the defendant which can be identified as coming from the plaintiff's lot, and wood, piled up, which was cut from the plaintiff's lot, is still left in it. The lessees went into insolvency on August 13, 1884, and Josephus Crafts was duly appointed assignee.

In July, 1884, after the lessees had failed, and after the plaintiff was informed of it, he took possession of all the logs, lumber, and wood which he claimed to belong to him, the lessees, or some of them, pointing out some things which they admitted were logs, wood, or lumber from his lot; and this possession has been maintained ever since. The lessees assented to this taking of possession, and did not deny the plaintiff's right to such of the logs, lumber, or wood as could be identified.

The judge ruled that the lessees could not, in July, 1884, after they had failed and the plaintiff knew it, by any assent of theirs, give the plaintiff a title to the identified wood, lumber, and logs, which would be good as against an assignee in insolvency, if the plaintiff had no such title before; and also ruled that, on the facts found, the plaintiff had lost the property in all of the wood, logs, and lumber cut from the lot, and that the bill should be dismissed. In order to save the waste of the property, pending an appeal, the judge ordered a reference to a master to determine the kind, quality, and value of the logs, lumber, and wood remaining which could be identified as coming from the plaintiff's lot, and the kind, quality, and value of the same which had been mingled with wood, logs, or lumber, and could not be identified,

and the kind, quantity, and value of the logs, lumber, and wood ˖which had been sold by the lessees, before the plaintiff took possession and since, and to whom the same had been sold, and whether the purchasers had paid for them.

A report was subsequently filed by the master, to which was annexed a full report of the evidence taken before him. On the coming in of this report, a decree was entered dismissing the bill, with costs; and the plaintiff appealed to the full court.

*D. W. Bond*, for the plaintiff.

*J. C. Hammond*, for the assignee.

GARDNER, J. The contract between these parties is contained in a written lease, by the terms of which the plaintiff leased to Nathaniel Day and Brothers a wood and timber lot of ten acres, " with the privilege " to the lessees " of cutting and removing all the wood and timber from the same on or before April 1, 1885." The lease was executed on January 20, 1883, to go into operation on April 1, 1883. It contained this clause: " It is agreed and understood by the parties to this instrument that the wood and timber on the above-described premises shall be held by the lessor as guaranty for the payment of the above sum of eighteen hundred dollars, and interest as above named." By the lease, it appears that the lessees promised to pay the lessor or his order, " on the first day of May next," $1800, with interest from January 20, 1883; and the justice before whom the case was tried found that, contemporaneously with the execution of the lease, a promissory note for $1800 was given by the lessees to the plaintiff, with interest, payable on May 1, 1883.

After the lessees had been in possession under their lease one month, they were required by their contract to pay the entire sum of $1800, with interest, to the lessor. It would seem that it was the original intention of the parties, that, before any material portion of the wood and timber was cut, the $1800 should be paid. The lessees had two years to cut and remove the same, and it is apparent, by the reservation made in the lease, that the plaintiff did not intend that the lessees should have time to cut the wood and timber before they were to pay the money due. This intention is more evident, if, as the plaintiff contends in his brief, it is not practicable to cut off a lot, heavily wooded as this was, without drawing off the trees as fast as cut,

and the drawing can only be done in winter on sleds. If this suggestion is correct, the intention of both parties to the lease becomes more evident, that the lessees, before any work was done upon the wood-lot, were to pay the $1800. When the note matured, the makers requested the plaintiff to let the money lie at interest, to which he assented. In the fall or early winter following, the lessees were desirous of commencing work upon the wood-lot, but before cutting off the trees they "asked the plaintiff if he was willing that they should cut off the wood and timber, and he said, Yes." The parties contemplated, at the time of the execution of the lease, that the note would be paid at maturity. And the security of the plaintiff must have been originally intended to apply to the wood and timber on the lot, whether cut or uncut, during the month of April, as the note became due on May 1.

The word "guaranty" as used in this instrument fairly means security or lien; that the plaintiff should hold the wood and timber as security for the price thereof; that he should have a lien upon the same. This does not make the sale conditional. There is nothing in the contract which shows that the title to the property should remain in the plaintiff until the $1800 was paid. It gives the lessees the privilege of cutting and removing all the wood and timber within a certain time, if payment of the amount agreed upon was made. If this was not paid, then the plaintiff was to hold the same as a security therefor. The sale was complete, with the exception of delivery. From the acts and conduct of the parties in relation to this contract before any breach thereof was claimed, it is apparent that they understood from it that the possession of the wood and timber was to be held by the plaintiff as security for the payment of the price agreed upon, and that the plaintiff was not to surrender his possession until the note was paid. This is very different from a conditional sale.

Upon a fair construction of the contract, we think that the parties agreed thereby that the wood and timber should be held by the plaintiff as security, in the nature of a pledge, for the payment of the $1800 and interest; but that the instrument does not contemplate that the title to the property should remain in the plaintiff until payment was made.

The law is well settled, that, where one voluntarily delivers possession of property which is pledged, or upon which a lien exists, without any restriction or qualification, and without insisting upon payment, it is a release or waiver of any security or lien he may have upon such property, for its price. *Farlow* v. *Ellis*, 15 Gray, 229. *Scudder* v. *Bradbury*, 106 Mass. 422. *Haskins* v. *Warren*, 115 Mass. 514. *Upton* v. *Sturbridge Mills*, 111 Mass. 446. If the vendor who has such security upon property chooses to deliver it to the vendee, voluntarily giving up his lien, relinquishing his pledge unconditionally, absolutely, and without insisting upon payment, such delivery makes the sale complete, vests the property in the vendee, and thereafter, in the absence of fraud, the vendor ceases to have any right in the property so delivered, and cannot claim under any pledge or lien which he may have enjoyed originally.

The waiver or release of security may be shown by evidence, by acts, conduct, or declarations, showing the purpose of the vendor to yield his right and not further to insist upon it. This intent and purpose of the vendor are questions of fact, to be determined by the tribunal trying the issue. In the case at bar, this question was determined at the trial. The evidence is reported only in part, and we cannot review the finding of the justice who heard the case.

The bill raises no question as to the wood and timber remaining upon the lot, and we have not considered to whom the same belongs.

After the lessees failed, the plaintiff took possession of all the remaining wood and timber which could be identified, the lessees assenting, and not denying the plaintiff's right thereto. If the rights of others had not intervened, the parties could legally enter into such an arrangement, and reinvest the plaintiff with possession and title to the property. But it appears that this was done after the lessees had failed, of which fact the plaintiff had knowledge. The presiding justice rightly ruled, that, after the lessees had failed and the plaintiff knew it, they could not by any assent of theirs give the plaintiff a title to the identified wood, lumber, and logs, which would be good as against an assignee in insolvency, if the plaintiff had no such title before.

*Decree affirmed.*