### HENRY KELLOGG, JR. *vs.* SAMUEL TOMPSON.

Suffolk. March 9. — May 20, 1886. W. ALLEN & HOLMES, JJ., absent.

At the trial of an action for the conversion of a promissory note payable to A., signed by B. and pledged to the plaintiff, another note, signed by A. and delivered to the defendant, containing the words "collateral in B.'s note," was put in evidence by the plaintiff, who was then allowed to show, by the testimony of A., that, in a loan of a certain sum by the defendant to A., which that note represented, nothing was said about the note in suit, and that A. did not know that it was mentioned as collateral in any note he had given to the defendant; and the judge ruled that it "could not be received to affect the right of either party under the note and contract" admitted in evidence. *Held*, that the defendant had no ground of exception.

In an action for the conversion of a promissory note, several months before its maturity, evidence of the financial condition of the maker of the note at its maturity is inadmissible upon the question of damages.

If a promissory note, held in pledge, is delivered by the pledgee to the pledgor for the purpose of procuring it to be discounted, and a third person advances money upon the note, in good faith, and in ignorance of the pledgee's title, he can retain the note, as against the pledgee, as security for the advance; but if such person knew, at the time the note came into his possession, of the pledgee's title, he cannot hold it, as against the latter, either for an advance of money upon it as a loan to the pledgor, or as security for any former indebtedness of the pledgor to him.

If some of the evidence at the trial of an action is conflicting, one party is not entitled to a ruling that, upon the undisputed facts of the case, the jury must find for him, unless the disputed facts were immaterial to the issue.

A party to an action is not entitled to have a request for a ruling granted, which fails to state any proposition of law, but asks for a ruling upon certain facts which the jury may find.

TORT for the conversion of a promissory note for $3000, dated April 17, 1883, payable six months after date to the order of

William J. Wilson, signed by Charles E. Johnson, indorsed by said Wilson and by Murphy and McCarthy, and pledged to the plaintiff. At the trial in the Superior Court, before *Knowlton*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*W. E. L. Dillaway*, for the defendant.

*H. G. Allen*, for the plaintiff.

GARDNER, J. 1. On June 16, 1883, Wilson delivered to the defendant a promissory note, signed by him, for $425, which contained the following: "Collateral in Johnson's note of three thousand dollars, indorsed by Murphy and McCarthy." After this note was put in evidence, the plaintiff was permitted, under the defendant's objection, to show, by the testimony of Wilson, that, in the loan of $400 by the defendant to Wilson, which was represented by the note of $425, nothing was said about the Johnson note; and that Wilson did not know that it was mentioned as collateral in any note he had given the defendant. The court admitted the evidence, and ruled that it " could not be received to affect the right of either party under the note and contract of June 16."

The parties to the suit were not the parties to the note and contract. The rule which excludes parol testimony for the purpose of varying or contradicting a written contract is confined to the parties to the contract, or their privies, and does not prevent strangers thereto from introducing such evidence. 1 Greenl. Ev. § 279. *McMaster* v. *Ins. Co. of North America*, 55 N. Y. 222. *Edgerly* v. *Emerson*, 23 N. H. 555. *Badger* v. *Jones*, 12 Pick. 371. The plaintiff was not a party to the note and contract between Wilson and the defendant, and was therefore not bound by it. If it speaks falsely, or fails to speak the whole truth, he is not to blame, and can show the truth, even by the testimony of one of the parties who is legally bound by its terms. We think that the evidence was properly admitted.

2. The defendant offered to show the financial condition of the maker of the note at its maturity, which was several months after its conversion. This related to the question of damages. The measure of damages, in actions of trover, is the value of the property at the time of the conversion. This rule is applicable to negotiable paper. *King* v. *Ham*, 6 Allen, 298. The evidence

offered had no tendency to show the value of the note when con-verted, and should not have been admitted.

3. At the conclusion of the evidence the defendant asked for six specific instructions,* none of which were given. Several of these raise the question as to the legal effect of the deliv-ery of the pledged note by the plaintiff to Wilson, for the specific purpose of procuring it to be discounted. The law is well settled, that an unconditional delivery of pledged property to the pledgor by the pledgee vests in the former the complete title to such property. Continuance of possession is indispensa-ble to his lien, and, when the custody over such property is abandoned, the security upon it is lost. *Homes* v. *Crane*, 2 Pick. 607. *Bonsey* v. *Amee*, 8 Pick. 236.

The possession of the pledge by the pledgor may be under such special circumstances as not to divest the pledgee either of title or possession. Thus, where the master of a ship pledged his chronometer to the owners, and they permitted him to keep it on board their ship, and use it for the purpose of navigating their ship for a limited period, it was held that they had not lost their lien. Under the terms of the agreement, it was not a part-ing with the possession. The possession of the captain was still the possession of the owners. *Reeves* v. *Capper*, 5 Bing. N. C.

---

* These were as follows: "1. Upon the undisputed facts in this case the jury must find for the defendant. 2. If the jury find that Kellogg gave the note in question to Wilson to sell or get discounted, and Wilson delivered the same to Tompson to secure Tompson for a loan of money made at that time, this would authorize Tompson to hold the note so delivered, and his right so to hold it would be superior to that of Kellogg, and the verdict must be for the defendant. 3. If the jury find that Kellogg delivered the note in question to Wilson to sell or get discounted, and Wilson delivered the note to Tompson as collateral security for the debt named in the note of $425, dated June 16, 1883, this would be sufficient to entitle Tompson to hold said note of $3000, and this action cannot be maintained, and the verdict must be for the defendant. 4. As Tompson received the note in question as collateral for the loan of $425, made June 16, 1883, he is entitled to hold the same, and this action cannot be maintained. 5. Accord-ing to the statement of Kellogg as to the manner and circumstances under which he delivered the $3000 note to Wilson, he is bound by the contract embodied in the note of $425, which Wilson gave to Tompson. 6. If the jury find that Tompson took the note from Wilson, according to the terms set forth in the note of $425, Kellogg is bound by the act of Wilson, and cannot maintain this action."

136. The pledgee of a bond delivered it to the pledgor for the purpose of his exchanging it for stock, which was to be returned on the next day to the pledgee, as a substituted security. The pledgor converted the bond, and the pledgee maintained trover against him for the conversion. *Hays* v. *Riddle*, 1 Sandf. 248. This case is cited in *Way* v. *Davidson*, 12 Gray, 465, where the pledgee of a promissory note, who had delivered it back to the pledgor under an agreement to return it or another note, which he refused to do, was permitted to maintain an action of tort in the nature of trover for the conversion of the note.

If property pledged is delivered by the pledgee to the pledgor, to sell or dispose of as his agent, and account to him for the proceeds, as agreed upon between them, this transaction would preserve the pledgee's title in the property, and would enable him to recover it of any person who wrongfully came into its possession. If, however, the pledgee gives the property to the pledgor to dispose of for himself, upon the promise that, if he sells it, he will give him part of the price received for it, under such circumstances the property would pass into the possession of the pledgor as general owner, and the pledgee's lien would be lost. These principles of law were stated to the jury in unmistakable language.

The instructions given carefully guarded the rights of the defendant upon his claim that the note came into his hands innocently. The jury were instructed, in substance, that, if the plaintiff owned the note in pledge, and entrusted it to Wilson in such a way that Wilson might go into the market and probably mislead people into the belief that he was its owner, and a person in good faith paid him money on the note in the belief that he was the owner, the plaintiff must endure the loss, and the person who received the note under those circumstances could retain it as security for the advances which he made on it; if the defendant advanced money on the note innocently, supposing that it was Wilson's, and having no reason to suppose that anybody else had a claim upon it, he had a right to retain the note as security for an advance so made by him in good faith; if, on the other hand, the defendant knew at the time the note came into his possession that it was pledged to the plaintiff, or that he was its owner, he could not take it, either upon an

advance which he might make upon it as a loan to Wilson, or as security for any former indebtedness to him, and hold it as against the plaintiff.

The first request, that, upon the undisputed facts of the case, the jury must find for the defendant, was properly refused. Much of the evidence was conflicting, and it was the duty of the jury to pass upon all the testimony before them upon the facts disputed and undisputed. It was clearly not the duty of the court to select the undisputed facts in the case, and state to the jury what their verdict should be upon those facts, unless the disputed facts were immaterial to the issue. We fail to find in the report of the case any evidence which required the court to rule as requested.

The remaining prayers for instructions are defective in several particulars. They fail to request the court to instruct the jury upon any proposition of law, but ask for rulings upon certain facts which the jury might find. The instructions given were full upon all the questions raised at the trial, and stated the law clearly and accurately.          *Exceptions overruled.*