OTIS H. HARDING *vs.* LOTTIE M. ELDRIDGE.

Barnstable.   January 28, 1904. — May 20, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Mortgage*, Of chattels.   *Pledge.   Power.   Practice, Civil*, Amendment.   *Equity Jurisdiction.*

In an action of replevin for a piano, it appeared, that the defendant, being the owner of the piano, signed a paper promising to pay E. a certain sum of money with interest at a rate named "for one year from date, and having pledged with said E. as security for payment my piano [described] and I give said E. full power to sell said piano at public or private sale at any time after one year, giving three weeks' notice and applying proceeds of sale for payment of note accounting to me for surplus, if any." E. recorded this instrument in the office of the town clerk. The piano never was delivered to E. but remained in the possession of the defendant. More than a year after the date of the instrument, the defendant having made default, E. after giving three weeks' notice sold the piano at private sale to the plaintiff. *Held*, that there was no mortgage because the instrument signed by the defendant contained no words of grant or sale and the recording was of no effect, nor was the transaction a pledge because there was no delivery; therefore that the exercise of the power of sale on default could transfer no title or right of possession and the action could not be maintained. *Whether* the attempted sale operated as an assignment of equitable rights and the plaintiff could by amendment change his action at law into a suit in equity to enforce the agreement of the defendant, or whether if there was a remedy in equity it must be enforced by E. to whom the promise was made, *quære*.

REPLEVIN for a piano.   Writ dated December 30, 1902.

At the trial in the Superior Court before *Richardson*, J., without a jury, the plaintiff and one Edwards, under whom he claimed, were the only witnesses called and the facts were not in dispute.   It appeared that before August 26, 1901, the piano was the property of the defendant and was in the defendant's house at Chatham, where it remained until taken by the officer on the replevin writ.   On August 26, 1901, the defendant signed the following instrument in writing: "Chatham, Mass., Aug. 26th, 1901.   On demand I promise to pay Luther S. Edwards of Chatham, Mass., or order Thirty-five Dollars for value received with interest at 6 per cent for one year from date and having pledged with said Luther S. Edwards as security for payment my piano named the Woodward and Brown number as recorded in the Woodward and Brown office, Boston, and I give

said L. S. Edwards full power to sell said piano at public or private sale at any time after one year, giving three weeks' notice and applying proceeds of sale for payment of note accounting to me for surplus, if any. Lottie M. Eldridge. Witness, A. Thacher."

The piano never was delivered to Edwards but remained in the possession of the defendant. Edwards recorded the paper signed by the defendant in the office of the town clerk of Chatham. More than a year after the date of the paper Edwards, not having received the $35 upon demand and having given to the defendant three weeks' notice, sold the piano at private sale to the plaintiff for $48.

In the Superior Court the plaintiff contended that the paper signed by the defendant was a mortgage or other instrument under which the plaintiff obtained such a title that he was entitled to maintain the action, and the defendant contended that the transaction was an attempt to pledge which was not consummated because there was no change of possession. The defendant requested the judge to rule that upon the evidence the defendant was entitled to a finding. The judge after taking the case under advisement filed the following memorandum of his finding: "It is not necessary to determine whether the paper which the defendant gave to Mr. Edwards on Aug. 26, 1901, is technically a pledge or a mortgage; but the purpose and intent of the defendant upon the evidence is clear, which was to give to Edwards the right and power to take the piano and sell it — 'after one year, giving three weeks' notice' — and thereby to give to the purchaser a good title to it. This power was complied with, and I find that the plaintiff acquired a good title to the piano." The judge refused to rule as requested by the defendant and found for the plaintiff. The defendant alleged exceptions.

*C. Bassett & H. H. Baker*, for the defendant, submitted a brief.

*H. A. Harding*, for the plaintiff.

BRALEY, J. The plaintiff must prevail on the strength of his own title, and if under the alleged sale the title of the defendant did not pass to him, he never gained a legal right of ownership in the piano and cannot maintain this action.

When the note was negotiated and up to the date of the service of the writ of replevin, the piano remained in the possession of the defendant, and there never has been any delivery of it either to the plaintiff or his predecessor the payee of the note under whom he claims, and the rights of the parties must be determined solely by the written agreement. In construing this agreement a distinction must not be forgotten that it is not a present sale like the case of *Carter* v. *Willard*, 19 Pick. 1, where, as between the parties, no delivery would be required to transfer the title from vendor to vendee, but the intention here was to give and receive collateral security in some form for the payment of the note.

An examination of the contract shows that it is a negotiable promissory note in the usual form, combined with a statement of pledge that the piano was given as collateral security for its payment, joined with a power of sale. It may be treated as an agreement consisting of two parts: one the making of the note; the other the agreement giving security for its payment, though for convenience both are united. No further separation or distinction seems to be justified, for the power of sale is not a mere naked order or license to take the piano if the note is not paid, and sell it, but is appendant to the superior right, to enforce which it is given, and that such was the understanding of the parties is manifest from the form of the proceedings to foreclose, as the sale was not made until after written notice to the defendant, and in strict conformity to the power by which the property could be converted. By recording this contract its terms were not changed, nor did this act impress upon it the character of a mortgage, *Williams* v. *Nichols*, 121 Mass. 435, 436, neither can the fact of record be taken as amounting to a constructive delivery of the property. *Burge* v. *Cone*, 6 Allen, 412.

Though no particular or set form of words are required to constitute a mortgage of personal property, yet it not only must contain language from which the intention of the parties to enter into such an obligation is apparent, but the terms employed must be legally sufficient to carry out such purpose.

In the agreement under consideration none of the elements of a personal grant are found, as the writing signed by the defend-

ant implied neither a present conveyance of the property, or of a defeasance providing that if the debt was paid the title should revert in her as mortgagor, and for this reason the case cannot be considered as falling within that class of cases in which a formal bill of sale as between the parties, has been held to constitute a mortgage. *Homes* v. *Crane*, 2 Pick. 607. *Thompson* v. *Dolliver*, 132 Mass. 103. *Copeland* v. *Barnes*, 147 Mass. 388.

But if the transaction cannot be classed as a mortgage, it is the contention of the plaintiff that it can be treated as a pledge.

In the language used no direct formal personal pledge is made, but giving to the words " having pledged " the meaning which they naturally import it may be said that there was a present intention to furnish security, which was executed to the extent of signing the combined agreement, and if this had been followed by a delivery the bailment would have been complete. *Radigan* v. *Johnson*, 174 Mass. 68.

Beyond the statement that no actual delivery was made, which term must be considered as meaning a transfer of possession, the exceptions are silent, and whether any further steps were taken by the pledgee, such as taking formal manual possession of the piano, and then leaving it with the pledgor as his agent, is left to conjecture, and cannot be supplied in the decision of the case, which must be left where the parties are content to rest it, with no delivery of a chattel capable of being actually transferred, and the plaintiff's title rests alone on a constructive possession arising out of the paper transaction.

It is uniformly held that by a contract of pledge only a special title passes to the pledgee, which depends on actual possession, while the general right of property remains in the pledgor, and in order to hold and preserve his lien there must be not only a physical delivery, where the chattel can thus be transferred, but continued possession also retained. *Ward* v. *Sumner*, 5 Pick. 59. *Bonsey* v. *Amee*, 8 Pick. 236. *Walker* v. *Staples*, 5 Allen, 34. *Thompson* v. *Dolliver*, 132 Mass. 103. *Shaw* v. *Silloway*, 145 Mass. 503, 506. *Moors* v. *Reading*, 167 Mass. 322. *Beeman* v. *Lawton*, 37 Maine, 543, 546.

But this does not prevent a pledgee from permitting the pledgor to take and use the pledge for any special or limited

purpose, and if there is no unconditional delivery sufficient to revest the title, the possession, and special property as between them still remains unchanged. *Wilkie* v. *Day*, 141 Mass. 68, 73. *Kellogg* v. *Tompson*, 142 Mass. 76, 78.

It has accordingly been held that the pledgor may be the agent of the pledgee after original delivery, to retain the property pawned, and in such case the intention of the parties control, and the legal title does not change for the reason that the pledgor holds as the agent of his principal. *Kellogg* v. *Tompson*, *ubi supra*. *Casey* v. *Cavaroc*, 96 U. S. 467. *Easton* v. *German-American Bank*, 127 U. S. 532. *Martin* v. *Reid*, 11 C. B. (N. S.) 730.

The plaintiff relies on the decision made in *Macomber* v. *Parker*, 14 Pick. 497, but the case is an authority against his position rather than one in his favor. Among the issues raised in that case was the question of title between an attaching creditor, and the plaintiffs who claimed the property attached, under a pledge to them made by the debtor and the pledgor, who thereafter remained in manual possession of the pledge. But as it appeared that the plaintiffs had taken and retained possession of the property, and that the pledgor at the time of the attachment was acting as their agent, it was held that the pledge was not lost, but constituted a valid lien. Here if the pledgor had sold the piano, or a creditor had attached it, either would have had a good title against any one claiming under the contract. If there was neither delivery nor possession there was no pledge, and this part of the agreement became purely executory, and there was no property on which the alleged foreclosure could operate. *Macomber* v. *Parker*, *Thompson* v. *Dolliver*, *Shaw* v. *Silloway*, and *Casey* v. *Cavaroc*, *ubi supra*.

As the plaintiff has acquired neither title in nor right of possession to the property replevied, he cannot maintain his action. *Pratt* v. *Parkman*, 24 Pick. 42, 44.

If the sale is treated as an execution of the power, which has failed to vest in the purchaser any title because there was no special property in the supposed pledgee that could be transformed by its exercise into full ownership, and the foreclosure therefore operated in equity as an assignment of whatever rights such pledgee may have had, whether the plaintiff can by an

amendment change his action at law into a proceeding in equity under R. L. c. 159, § 6, treat the attempted contract of pledge as executory and compel the defendant to perform her agreement, or if such remedy exists it must be put in motion by the equitable pledgee himself, are questions which have not been argued and upon which we express no opinion.

*Exceptions sustained.*