FIRST NATIONAL BANK OF SUPERIOR, APPELLEE, v. J. F. BRADSHAW ET AL., APPELLANTS.

FILED APRIL 20, 1912. No. 16,683.

Pledges: Loss of Lien. In the absence of fraud or a special bailment, a pledge will be deemed to be waived or lost by the surrender of the pledged property by the pledgee.

APPEAL from the district court for Nuckolls county: LESLIE G. HURD, JUDGE. Reversed.

J. H. Grosvenor, for appellants.

Stubbs & Stubbs, contra.

REESE, C. J.

This is an action to foreclose the lien of an alleged pledge of certain shares of the capital stock of plaintiff, which it is alleged were pledged to plaintiff to secure the payment of certain promissory notes made to plaintiff by H. N. Bradshaw in his lifetime, but who is now deceased. A trial was had to the district court, which resulted in findings in favor of plaintiff and decree for the sale of the stock. Defendants appeal.

It is not deemed necessary to set out, nor to even refer to, the pleadings, as they are in the usual form, since, as we view the case, it must be disposed of upon the facts either admitted or conclusively shown by the evidence. A brief history of the case will render it more easily understood.

On the 25th day of October, 1893, a certificate for 74.42 shares of the capital stock of plaintiff was issued to H. N. Bradshaw, and on the 26th day of July, 1894, another certificate was issued to him for 3.33 shares of stock, making in the aggregate 77.75 shares held by him. Without so deciding, we will assume that those certificates were pledged to secure certain indebtedness due plaintiff upon his promissory notes held by it. The capital stock of the bank was $100,000, represented by shares of the par or face value of $100 each. Later on it was found that the capitalization of the bank was greater than its business and condition required, and, by the consent of the comptroller of the currency, it was scaled down to $50,000, and stock issued for one-half the number of shares of the first issue. On the 10th of January, 1901, the original certificate having been canceled, a certificate for 38.875 shares was issued to H. N. Bradshaw. On the 21st day of the following February (1901) H. N. Bradshaw died, the last named certificate being in the bank, as were a number of other papers belonging to the decedent. Some time shortly after his decease the bank delivered to his widow, Mrs. E. J. Bradshaw, a number of papers belonging to the decedent, and among which was the certificate of stock of the date of January 10, 1901, on the back of which was written, "Left as security to note of H. N. B. Bo (to?) Bank. C. E. A." (C. E. A. are the initial letters of C. E. Adams, the cashier of the bank. There was no indorsement or transfer by H. N. Bradshaw.) The certificate was retained by Mrs. Bradshaw in her possession until the 2d day of January, 1906, nearly five years, and during which time the surplus of dividends, after the payment of interest upon the notes of H. N. Bradshaw, was paid to

her and by her distributed to the heirs of his estate. On the said 2d day of January, at the suggestion of the bank officers, she surrendered the certificate in her possession to the bank, and it was indorsed, "Canceled by reissue to E. J. Bradshaw, No. 209. 1-2-06," and a certificate was issued to her, in her name, for an equal number of shares. On the 5th day of January, 1906, that certificate was assigned by her to "the estate of H. N. Bradshaw," the assignment being witnessed by C. E. Adams, the then president of the bank, and soon thereafter she delivered the certificate to J. F. Bradshaw, the administrator of the estate of H. N. Bradshaw, deceased, and he has retained its possession ever since; it being shown that it was in his possession at the time of the trial of this cause. From the time of the delivery of the certificate to Mrs. Bradshaw, early in 1901, to the date of the trial, the certificate had never been in the possession of the bank, either actual or constructive, nor had any information been given Mrs. Bradshaw or the administrator that the bank claimed a lien upon the stock as pledgee, no demand ever having been made for its surrender, nor did either one have any knowledge that such lien or pledge was claimed, nor did the bank ever take, or cause to be taken, any steps to obtain the possession of the certificate.

It is contended by defendant that, assuming that the stock, as originally issued, had been pledged, the lien of the bank had been waived and lost by the surrender and the subsequent issues of the stock, as above outlined, with the total absence of any claim of a lien upon it. There is no intimation of fraud or deception on the part of E. J. Bradshaw, the widow of deceased. Did plaintiff waive its lien?

In *Mahoney v. Hale*, 66 Minn. 463, the supreme court of Minnesota, in discussing the law of pledge, say: "To constitute a pledge, the pledgee must take possession, and to retain it he must retain possession. An actual delivery of property capable of personal possession and a continued change of possession is essential. In case of a

pledge, the requirement of possession in the pledgee is an inexorable rule of law adopted to prevent fraud and deception; for, if the debtor remains in possession, the law presumes that those who deal with him do so on the faith of his being the unqualified owner of the goods.  *  *  * There must not only be an actual delivery, as distinguished from a mere pretense, but the change of possession must be continuing; not formal, but substantial."

In Jones, Pledges and Collateral Securities (2d ed.) sec. 40, it is said: "It is a well-settled principle that a delivery back of the possession of the thing pledged terminates the pledgee's title, unless such redelivery be for a temporary purpose only, or be to the pledger in a new character, such as special bailee, or agent"—and a large number of cases are cited in the note as sustaining the doctrine.

The rule is stated in 22 Am. & Eng. Ency. Law (2d ed.) 860, to be: "In general—The pledgee must not only obtain possession of the property pledged, but must also retain possession, and a delivery back of the property with the consent of the pledgee terminates the bailment and the pledgee's lien." The rule is well supported by the citation of authorities in the foot-note. See, also, *Casey v. Cavaroc*, 96 U. S. 467; *Walker v. Staples*, 5 Allen (Mass.) 34; *Walcott v. Keith*, 22 N. H. 196; *Black v. Bogert*, 65 N. Y. 601; *Collins v. Buck*, 63 Me. 459; *Kimball v. Hildreth*, 8 Allen (Mass.) 167; *Thompson v. Dolliver*, 132 Mass. 103; *McFarland v. Wheeler*, 26 Wend. (N. Y.) 467; *Smith v. Sasser*, 49 N. Car. 43; *Hickok v. Cowperthwait*, 122 N. Y. Supp. 78, 137 App. Div. (N. Y.) 94.

In *Harding v. Eldridge*, 186 Mass. 39, it is said: "It is uniformly held that by a contract of pledge only a special title passes to the pledgee, which depends on actual possession, while the general right of property remains in the pledgor, and in order to hold and preserve his lien there must be not only a physical delivery, where the chattel can thus be transferred, but continued possession also retained"—citing cases.

As we have seen, the certificate for the 38.875 shares was issued to H. N. Bradshaw on the 10th day of January, 1901, and remained in the bank until after his death, which occurred February 21, 1901. Soon after his death the certificate was delivered to Mrs. Bradshaw, and she retained the exclusive possession of it until about the 2d day of January, 1906, a period of nearly five years, during which time the surplus of dividends, after paying interest on the notes, was paid to her, and during which time no intimation was ever conveyed to her that a lien or pledge was claimed. On the last named date she surrendered the certificate, and one was issued to her in her name and delivered to her, which she retained for a short time, when she transferred and delivered it to the administrator of the estate of H. N. Bradshaw, who retained its possession from that time on. No demand was ever made for its possession, nor was any claim of pledge made. Under all authority this must be held to have been a waiver of any lien which might have existed during the life of Dr. Bradshaw. It is unfortunate to plaintiff that we must so hold, for, if Dr. Bradshaw owed the bank at the time of his decease, every principle of honor would require that the debt be paid, but payment cannot be enforced by this action without running counter to the great weight of authority. Payment will have to be enforced by a resort to the assets of his estate, if at all.

It follows that the decree of the district court will have to be reversed and the cause remanded for further proceedings, which is done.

REVERSED.

LETTON and SEDGWICK, JJ., not sitting.