# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

**J. M. RADFORD GROCERY CO. v. POWELL (two cases).**

In re SEWELL.

(Circuit Court of Appeals, Fifth Circuit.   November 30, 1915.)

Nos. 2765, 2766.

1. BANKRUPTCY ☞440—APPELLATE PROCEEDINGS—MODE OF REVIEW.

An order made in a bankruptcy proceeding, denying a lien claimed by a creditor, is reviewable by petition to revise, under Bankr. Act July 1, 1898, c. 541, § 24b, 30 Stat. 553 (Comp. St. 1913, § 9608).

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. ☞440.

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY ☞172—ASSIGNMENT OF INSURANCE POLICIES—EFFECT OF RE-DELIVERY TO PLEDGOR FOR RENEWAL.

A pledge of insurance policies to secure an indebtedness by assigning the same to the creditor is not invalidated by their redelivery to the pledgor, especially where the assignment covers also renewals.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 220; Dec. Dig. ☞172.]

3. BANKRUPTCY ☞172—LIENS—PLEDGE OF INSURANCE POLICIES.

A pledge of insurance policies by a debtor in good faith more than four months prior to his bankruptcy, by assignment to a creditor, *held* valid, and to give the creditor a lien on their proceeds in the hands of the trustee; the property having been destroyed and the loss adjusted prior to the bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 220; Dec. Dig. ☞172.]

Appeal from, and Petition to Superintend and Revise Order of, the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

In the matter of C. A. Sewell, bankrupt; J. W. Powell, trustee. From an order denying its petition for a lien on the proceeds of insurance policies, the J. M. Radford Grocery Company appeals, and also files petition to revise. Appeal dismissed, and order reversed on petition to revise.

A. H. Kirby and R. W. Haynie, both of Abilene, Tex., for appellant and petitioner.

W. A. Wright and C. O. Harris, both of San Angelo, Tex., for appellee and respondent.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

228 F.—1

Before PARDEE and WALKER, Circuit Judges, and SPEER, District Judge.

SPEER, District Judge. [1] This cause is presented to the court both by appeal and petition to superintend and revise. This being a proceeding in bankruptcy to establish a lien, the controversy is reviewable by petition to superintend and revise, and it is therefore thought proper to dismiss the appeal. Hutting Sash & Door Co. v. Stitt, 218 Fed. 1, 133 C. C. A. 641.

Upon consideration of the petition, it appears that the Radford Grocery Company, a private corporation of Abilene, in the Northern district of Texas, was a creditor of C. A. Sewell in a considerable amount. The latter was adjudicated bankrupt on February 21, 1914, and J. W. Powell was appointed trustee. Part of the assets were the proceeds of four fire insurance policies. These were issued at various dates from March, 1913, to January, 1914, all before the voluntary petition in bankruptcy was filed. That was on the 21st day of February, 1914. Before that day the fire loss under the policies mentioned above had been sustained by Sewell, and had been adjusted by the insurance companies; the amount assessed being $6,655.84. A part of this sum, to wit, $681.50 was paid by the insurance companies upon certain fixtures against which the petitioner held a chattel mortgage. By agreement between the trustee in bankruptcy and the Radford Grocery Company the sum ascertained by the adjustment of the loss was collected by the trustee, and since then has been held by him under order of the referee in bankruptcy, pending the determination of the claim now before the court. In May, 1914, petitioner presented to the referee its claim to a valid lien upon this insurance fund. The trustee objected, a hearing was had before the referee, and order was granted by that official establishing the lien of the Radford Company upon the $6,655.84, and directing the trustee to pay the same to petitioner. A certificate for the review of this order was granted by the referee. The issue was presented to the judge of the District Court for the Northern District of Texas, who, after hearing, reversed the referee, and directed that the sum in controversy be distributed by the trustee upon the claims of the general creditors. From this order of the District Court the petition to superintend and revise, now under consideration here, was filed.

The assignment of the policies was more than six months before the time of the fire. From the instrument itself, it appears that it was, as stated, more than six months before the institution of bankruptcy proceedings. It was in writing, and is as follows:

"Miles, Texas, August 4, 1913.

"For value received, I hereby transfer, assign, and set over unto J. M. Radford Grocery Company, Abilene, Texas, their successors and assigns, all my title and interest in the following described fire insurance policies, and all advantages to be derived therefrom:

"Springfield F. & M. Insurance Company policy No. 229, $1,500, expiring 1/2/14.

"The Royal Exchange Insurance policy No. 3898196, $3,000, expiring 3/3/14.

"Commonwealth Fire Insurance Company, No. 580, $1,500, expiring 12/1/13.

"Austin Fire Insurance Company, No. 18190, $2,000, expiring 11/2/13.

"Orient Insurance Company policy No. 626888, $2,000, expiring 4/28/14.

"It is further agreed and understood that, as the above policies expire and are renewed, the renewals take the place of above policies, and this transfer will hold good and be valid as to the above transfer. This transfer is for the purpose of securing said J. M. Radford Grocery Company, covering the indebtedness owing by me to said J. M. Radford Grocery Company, aggregating about seven thousand ($7,000.00) dollars, and for all advances made me by said J. M. Radford Grocery Company in the future.

"Witness my hand this the 4th day of August, 1913.　　　　C. A. Sewell.
"Witness:　C. W. Gill."

[2] Now, it is complained by the trustee that after the policies of insurance were transferred they were actually handed by the Radford Grocery Company to Sewell and remained in his possession, and were returned to that company not until after the loss had accrued. This is explained by the clause in the assignment which provided for the renewal of the policies as they expired, the renewals to take the place of the policies originally assigned. There is nothing unusual or unlawful in this. In Winslow v. Harriman Iron Co. (Tenn. Ch. App.) 42 S. W. 698, the court says:

"In the case of Johnson v. Smith, 11 Humph. 396, 400, it is stated: 'There is no doubt that by an agreement of the parties the pledge may be deposited in the hands of a third person, instead of being delivered to the pawnee, and such person will be considered as the agent or servant of the pawnee, for keeping possession of the pledge; and it would seem that the pawnor himself may be constituted such agent.' Story, Bailm. par. 226; Cross, Liens, 65; Macomber v. Parker, 14 Pick. [Mass.] 497."

See, also, Clark v. Iselin, 21 Wall. 360, 22 L. Ed. 568; Harding v. Eldridge, 186 Mass. 39, 71 N. E. 115; Ward v. Sumner, 5 Pick. (Mass.) 59; Walker v. Staples, 5 Allen (Mass.) 34; Shaw v. Silloway, 145 Mass. 503, 14 N. E. 783; Moors v. Reading, 167 Mass. 322, 45 N. E. 760, 57 Am. St. Rep. 460; Beeman v. Lawton, 37 Me. 543; Wilkie v. Day, 141 Mass. 68, 6 N. E. 542; Kellogg v. Thompson, 142 Mass. 76, 6 N. E. 860; Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779; Easton v. German American Bank, 127 U. S. 532, 8 Sup. Ct. 1297, 32 L. Ed. 210; Martin v. Reid, 103 E. C. L. 730.

The rule would seem peculiarly applicable to policies of insurance which are issued in the name of the pledgor, and on which the premiums must be paid by him.

[3] Sewell had originally bought his stock from the Radford Grocery Company. He had been indebted to it on the original purchase and for other goods for about three years. While it is urged that he was insolvent at the time the policies were transferred, this is immaterial here, for the transfer was not made within four months antecedent to bankruptcy. The record does not disclose any evidence of fraud in connection with the assignment. This passed the title to the Radford Company of any right which might flow to Sewell through a possible fire loss resulting. It is said that the assignment was not recorded, or filed for record, as a chattel mortgage; but there is no provision of the law of Texas which requires such record of such an assignment. It is also said that no notice of the assignment was given any of the insurance companies; but the insurance companies have not been heard to complain.

It is also said that Sewell made several statements of his assets to his creditors. In two of these, one dated March 13, 1913, and an-

other June 19th of the same year, he stated the amount of insurance carried on his stock. The third statement was made on January 6, 1914. In this the insurance was not mentioned. This, however, is not a badge of fraud, for in August, 1913, he had assigned his insurance to the Radford Company. His failure to state the amount of his insurance on his stock after the policies had been assigned, when he made such statements before assignment, seems rather evidence of integrity than of purposeful wrong.

It is, however, said that the transfer is preferential, for the insurance policy is in the nature of a chattel mortgage. This seems scarcely accurate. The mortgagor has title to the chattel when the mortgage is made. In some jurisdictions he conveys the title by the mortgage; in others, he retains the title, and the mortgage is regarded merely as security for the debt. This is quite unlike the contract of insurance. It is, indeed, a contract of chance. The insurer conveys, and the insured takes nothing but a contingency. The policy itself is nothing but evidence of the contract. It becomes functus officio, and worthless, on expiration or renewal. As correctly observed by the learned District Judge in his opinion:

"The value of such policies at the time of the transfer could not have been more than an amount equal to the unearned premium thereunder."

How trivial, then, would have been such a preference.

Long v. Farmers' State Bank, 147 Fed. 360, 77 C. C. A. 538, 9 L. R. A. (N. S.) 585, is cited in contravention of these views; but in that case—

"there had been no effective transfer of certain insurance money to the bankrupt's creditor until the money was turned over by the bankrupt to the creditor, which was within four months prior to the filing of a bankruptcy petition."

This was held to constitute a voidable preference. Here, however, the money was paid to the trustee, and the matter left for determination by the bankruptcy court.

In Long v. Farmers' State Bank, supra, it was declared in the opinion of the court:

"Clearly this did not constitute an assignment of the policies in præsenti. This contract was no more than the personal agreement or undertaking of Wells that he would keep the property insured, and in case of loss he would collect and pay over to the bank sufficient to liquidate the debt. The contract conveyed nothing."

That is not this case.

In Loeser v. Savings Deposit Bank & Trust Co., 148 Fed. 975, 78 C. C. A. 597, 18 L. R. A. (N. S.) 1233, there was a chattel mortgage to secure an antecedent debt, which the law of the state required to be recorded to render it valid as against lien creditors of the mortgagor, or subsequent purchasers or incumbrancers in good faith, and which, while given previously, was not recorded until within four months prior to the mortgagor's bankruptcy, and also where the mortgagee knew, or had reasonable cause to believe, the mortgagor to be insolvent. This was held a preference. Here, however, we repeat, there was no provision for record of the assignment.

Nor does it seem that the action of the Redford Grocery Company

and of Sewell was, in a business sense, immoral. Before the enactment of the Bankruptcy Law, the preference of a creditor by a debtor was permitted in many states. It is even now malus prohibitum, not malum in se. It does not seem, in the absence of fraud or disregard of the statute, that a question of morals is involved. A debtor, at a time when he might lawfully do so, sought to protect the creditor who had established him and maintained him in business. In the facts we discover no violation of the law. But, on the other hand, if the legitimate transfer of insurance is to be deemed a badge of insolvency, this mighty business, which we are told originated at least as early as the tenth century, and now constantly utilized to strengthen credit and expand enterprise, may be largely shorn of the benefits it confers.

In view of these considerations, the decision sought to be reviewed is reversed, and the holding of the referee is affirmed. It is directed that the trustee pay the costs on the petition for review, and that the appellant pay the costs of the appeal.