MERCHANTS COLLECTION AGENCY, LIMITED, *v.* MRS. LOUISE MITCHELL, DEFENDANT; LIBBY, McNEILL & LIBBY OF HONOLULU, LIMITED, GARNISHEE.

No. 2042.

Argued March 11, 1932.           Decided March 24, 1932.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY BANKS, J.

This is an action on a promissory note. The note was executed by the defendant on April 3, 1930, for the sum of $500, the payee being the Hawaii Lumber Company, Limited, an Hawaiian corporation. By its terms the note matured on August 1, 1930. The consideration was the issuance and delivery to defendant of a certain number of shares of the capital stock of the payee. On April 9, 1930, the lumber company borrowed from the Bishop First National Bank the sum of $12,000 and delivered to the bank, among other securities, the note in question. On September 5, 1930, the bank took from the lumber company another note, the amount of which does not appear in the record, and retained as collateral all of the securities which it had taken on the first note, including the note in question, and in addition two certain leaseholds owned by the lumber company. No additional money was loaned to the lumber company by the bank at the time the new note was taken and we think it apparent from the record that the new note was merely an extension of the former note. Before the new note was taken the note involved in the instant action was indorsed in blank by the bank without recourse and was finally turned over to the Merchants Collection Agency, Limited, the plaintiff herein, for collection. The circumstances

under which this was done, as they appear from the evidence before us, were as follows: On August 2, 1930, one day after the maturity of the note before us, the law firm of Kemp & Stainback sent to the Bishop First National Bank the following letter, signed by said firm as attorneys for the Hawaii Lumber Company: "You hold eleven promissory notes aggregating the principal sum of $12,000.00 drawn by various persons in favor of the Hawaii Lumber Company, Limited, as security for a loan to the Hawaii Lumber Company, Limited, all of said notes having matured on August 1st, 1930. In order that collection may be made of said notes the Hawaii Lumber Company desires that suits be filed thereon and requests that you endorse said notes to Merchants Collection Agency, Limited, for suit, the Hawaii Lumber Company, Limited, to bear all expense of the filing and prosecuting of said suits. We have procured from the Hawaii Lumber Company, Limited, a receipt for said notes in order that we may institute suits on said notes in the name of Merchants Collection Agency, Limited." After the receipt of this letter by the bank S. B. Kemp, a member of the firm of Kemp & Stainback, called at the bank, and the note involved in this suit, among the other notes mentioned in the letter, was turned over to him, with the indorsement just mentioned, and was by him turned over to the collection agency for collection. At the time the note was turned over to Judge Kemp he presented to the bank the following receipt:

"Received of Bishop First National Bank of Honolulu the following promissory notes held by said Bank as collateral security to our loan of $12,000.00:

| | |
|---|---|
| Manuel Spencer | $2,000.00 |
| George Munden | 1,000.00 |
| Halaula Kanawaluali | 2,000.00 |
| J. C. Corney | 2,000.00 |

| | |
|---|---|
| William Enoka | 500.00 |
| Albert W. Horner | 1,000.00 |
| Mrs. Louise Mitchell | 500.00 |
| Ruby A. Bright | 500.00 |
| Thomas Lishman | 500.00 |
| Frank Kaaihue | 1,000.00 |
| John Naumu | 1,000.00 |

said notes being delivered to us for suit and the proceeds collected to be applied to our indebtedness to said Bank.

"Honolulu, T. H., this the 2nd day of August, A. D. 1930.

"Hawaii Lumber Company, Limited,

"By A. T. Henderson

"Its Secretary."

George S. Waterhouse, vice-president of the bank, who represented the bank in the delivery of the note to Kemp, testified in substance that the note was delivered to the lumber company through Judge Kemp and then to the Merchants Collection Agency for the purpose of collection, the proceeds to be applied to the Hawaii Lumber Company's note.

On August 4, 1930, the instant action was commenced. On April 16, 1931, the date the action was tried, there was due the bank on the renewal note a balance of $6,243.31. At the conclusion of the plaintiff's evidence the defendant made the following offer of proof: "Mr. Dwight: This is an offer to prove that the note upon which this action is based was procured by fraud and misrepresentation by an agent of the Hawaii Lumber Company, Mr. Millard. Mr. Millard represented to Mrs. Mitchell that the Hawaii Lumber Company was in a solid and prosperous condition; that it had large quantities of lumber on hand, had extensive finances and cash; that the company was not incumbered by any debt; that every subscriber to stock would receive from the date of

such subscription eight per cent per annum by way of dividends; that the company had been paying to all subscribers of stock eight per cent in dividends; that the status of the company had been investigated by the Hawaiian Homes Commission; that the commission had found the company to be in a prosperous condition and that they recommended that Hawaiian homesteaders could safely invest their funds in the capital stock of that company. That the representations made by the agent were so made with the knowledge that they were false; that they were made recklessly, and without any knowledge—with full knowledge of their falsity; that the representations were made with intent to deceive the defendant; that these representations were relied upon by the defendant when she executed the note, and that upon those representations the note was given by the defendant to the Hawaii Lumber Company through this agent. We offer to prove further that the note upon which this action is based was negotiated before maturity by the Hawaii Lumber Company to the Bishop First National as collateral to secure the note of the Hawaii Lumber Company; that thereafter, after maturity, the note was negotiated by the bank to the Hawaii Lumber Company taking up other and different security as collateral; that thereafter the note was assigned to the plaintiff herein—by the Hawaii Lumber Company to the plaintiff herein. We further offer to prove that the note upon which this action was based was given by the defendant to the Hawaii Lumber Company for a subscription to stock; that the Hawaii Lumber Company was without authority to issue or to sell the stock; that the issuance and sale of stock to the defendant was in violation of law, and that therefore the note was given for an illegal consideration."

Counsel for plaintiff objected to the offer of proof

on the ground that it was irrelevant, incompetent and immaterial and on the further ground that the same was inadmissible as against the plaintiff, a holder in due course. Thereupon the court stated: "If you have any evidence to offer that this note was negotiated after maturity (before maturity) and transferred or assigned by the Bishop First National Bank back to the Hawaii Lumber Company for valuable consideration, I will allow that evidence."

Pursuant to the above statement by the court the defendant called as a witness Irwin Spalding, an officer of the Bishop First National Bank, whose testimony entirely corroborated that of Waterhouse as to the purpose for which the note was returned to the lumber company, and had no tendency whatever to show that the note had been negotiated after maturity. At the conclusion of Spalding's testimony, there being no further evidence offered by the defendant, the plaintiff renewed its motion for a directed verdict. The court sustained this motion and the jury returned a verdict in accordance with the court's direction. The defendant took exceptions to the court's ruling and the verdict of the jury and brings the case here on these exceptions.

It is conceded by the defendant that at the time the note was transferred to the bank as security for the original loan by the bank to the lumber company the former had no notice that any fraud had been practiced on the defendant. It is also conceded that the bank received the note in due course at that time. The defendant does not contend, however, that the legal effect of the indorsement of the note in suit and its return to the lumber company was to surrender it as security and to reinvest the lumber company with its ownership.

The defendant further contends that when the new note was taken by the bank from the lumber company

after the maturity of the note in suit, the latter was again taken as security; that the bank at that time had notice of its infirmity and that thus the offer to prove that it had been fraudulently procured by the lumber company should have been allowed. This contention cannot be sustained. The evidence is uncontradicted that the note in suit was returned to the lumber company for the sole purpose of enabling it to enforce its collection for the benefit of and on behalf of the bank. There is not a scintilla of evidence that it was returned for any other purpose. Under these circumstances the lumber company held the note in suit as the agent of the bank for a specific purpose and was not reinvested with its ownership.

In *Clark* v. *Iselin*, 21 Wall. 360, 22 L. Ed. 568, which is a leading case on this question in the United States, the facts were as follows: The plaintiff was the trustee in bankruptcy of Dibblee & Company, jobbers. The defendants were bankers who had had various transactions with Dibblee & Company prior to their adjudication as bankrupts. One of these transactions consisted of a large loan of money from the defendants to Dibblee & Company. As collateral security for this loan Dibblee & Company pledged to the defendants a large number of bills receivable. Subsequently, and prior to the adjudication of Dibblee & Company as bankrupts, the defendants delivered the aforesaid bills back to Dibblee & Company for the purposes of collection. Dibblee & Company thereupon proceeded to collect the same and turn the proceeds over to the defendants. The action was in part an effort by the trustee to set aside the payment of the above proceeds as a preference on the ground that the defendants had divested themselves of their title to the choses in action by redelivering them to Dibblee & Company. In overruling this contention the court said (p. 368): "It

is argued by the counsel for the assignee that the return to Dibblee & Co. for collection of the notes transferred to secure the loan of August 6th, 1868, for $61,000, destroyed the title of Iselin & Co. to them. The notes, however, were returned to Dibblee & Co. for convenience of collection, to be collected for account of the defendants or to be replaced by others. Obviously this deposit in no degree affected the title of the defendants to the notes. It merely facilitated collections. In *White* v. *Platt*" (5 Denio 269) "it was said by the court that 'where promissory notes are pledged by a debtor to secure a debt, the pledgee acquires a special property in them. That property is not lost by their being redelivered to the pledgor to enable him to collect them, the principal debt being still unpaid. Money which he may collect upon them is the specific property of the creditor. It is deemed collected by the debtor in a fiduciary capacity.' "

In *Stockyards National Bank* v. *First National Bank*, 249 Fed. 421, 422, the Farmer State Bank had borrowed a sum of money from the plaintiff and had delivered to the latter as collateral security fifteen promissory notes of its customers. Shortly thereafter and at about the time the notes became due the plaintiff handed them over to the Farmer State Bank for collection and remittance and when collected and remitted to be credited to the principal note. The Farmer State Bank executed a receipt for its notes as follows: "Received for collection from Stockyards National Bank, South St. Paul, Minn., the following list of notes, held as collateral to note of T. J. Cummings, the proceeds of which are to be remitted to said Stockyards National Bank, and indorsed on indebtedness here:" (The aforesaid receipt included a list of the fifteen notes received by the Farmer State Bank from the plaintiff.) Thereafter, and without any authority from the plaintiff, the Farmer State Bank sold several

of the above notes to the defendant. The action was instituted against the defendant to recover the proceeds thereof. In answer to the defendant's contention that the plaintiff divested itself of any property interest in the promissory notes by the redelivery to the pledgor bank, the court states (p. 423) : "The pledgee of promissory notes, residing in a city other than where the notes are payable, the notes in controversy being payable at the bank of the pledgor, does not lose title to the pledged notes by sending them to the pledgor for collection, the pledgor receiving them for that purpose only, unless they are assigned for value, before maturity, and without notice to a bona fide purchaser, in due course of business. Clark v. Iselin, 21 Wall. 360, 368, 22 L. Ed. 568; J. M. Radford Gro. Co. v. Powell, 228 Fed. 1, 142 C. C. A. 457." After considering several other questions the court reversed the action of the lower court in directing a verdict for the defendant and granted the plaintiff a new trial.

In *White* v. *Platt,* 5 Denio 269, the defendant delivered to the plaintiff in New York three promissory notes as collateral security for a debt owing from defendant to plaintiff. The makers of these notes lived in Ohio. For the sake of convenience plaintiff delivered these notes back to the defendant for the purposes of collection because the defendant was contemplating a trip to Ohio. The defendant proceeded to collect the notes and use the proceeds for his own purposes. The defense now asserted by the defendant is an intervening discharge in bankruptcy. Under the bankruptcy statutes then in force in New York fiduciary obligations were not dischargeable in bankruptcy. The court was thus called upon to determine if the defendant was acting as a trustee for the plaintiff in the above transaction, and did so decide in favor of the plaintiff. In discussing the duty owed by the defendant to the plaintiff in the above

circumstances the court said (p. 274): "The note or security all the time belongs to his principal; the money when collected belongs to his principal; he has received it for the special purpose, and on the special trust to collect the money and keep it for his principal. It was never contemplated that the party, when he collected the money upon such security, could use it as his own, and carry it into account, and he is not authorized by any custom or general understanding in such cases, so to do."

It is further the contention of the defendant that it is not enough that the plaintiff prove itself a holder in due course of the note involved in this action in order to recover thereon. The defendant's position in this respect being that since the collateral held by the bank is considerably in excess of the total remaining indebtedness of the lumber company to the bank, a burden devolves upon the bank to show that it is equitably entitled to go against this particular portion of its security, namely, the defendant's note. This view rests upon the assumption that the evidence referred to by the defendant's offer of proof and rejected by the court below would have shown the defendant to have a valid defense of fraud as against the payee, the lumber company. In other words, as the defendant contends, if she could have successfully established the lumber company's fraud in inducing her to make the note, it would have then become a condition precedent to plaintiff's recovery in this action that such recovery was essential to the protection of its security. This contention of the defendant is unsound. The law places no such restriction upon the rights of a pledgee arising out of its collateral security. We think the law is correctly stated in the following cases.

In the case of *Sowell* v. *Federal Reserve Bank*, 294 Fed. 798, the question before us was squarely presented. The defendant had executed a promissory note to the

National Bank of Cleburne, which had in turn pledged the note to the plaintiff among other collateral as security for a loan. One of the objections to recovery urged by the defendant was as follows (p. 799) : "Because the district court refused to stay the suit until it could be determined whether the other collateral, which the plaintiff held to secure the indebtedness of the National Bank of Cleburne, was sufficient to pay the indebtedness." In holding this contention to be unsound the court said (p. 801) : "Defendant's contention that the suit should have been stayed until defendant had exhausted its other collateral is untenable in reason and unsupported by authorities. The doctrine of marshaling assets applies only to the case of a junior lien holder, who seeks to compel a senior lien holder to exhaust security, which the senior has, and which the junior has not access to, and only in cases of a common debtor to two creditors for the protection of the junior creditor. It does not require a bona fide holder of negotiable paper, pledged as collateral to an indebtedness, to proceed first against other collateral, because of equities alleged to exist between the original parties to the pledged paper. The obligation of the maker, as to the bona fide holder, is to pay certainly at a fixed time. Payment at the fixed time may be vital to the holder of the paper, especially when it is a bank. The rights of the obligors, on the other collateral, could be determined only in a proceeding to which they were all made parties. Such a determination would involve interminable delay and hopeless confusion. No such condition to the payment of the note at maturity entered into the obligation of the maker, and to inject it would be to greatly impair the negotiability of commercial paper, the value of which depends upon the assurance of prompt payment at maturity regardless of equities between the original parties. The authorities are opposed

to such an application of the doctrine of marshaling the assets. Haas v. Bank of Commerce, 41 Neb. 754, 60 N. W. 85; Citizens State Bank v. Iddings, 60 Neb. 709, 84 N. W. 78; Dallemand v. Bank, 54 Ill. App. 600; Third National Bank v. Harrison (C. C.) 10 Fed. 243."

In *Elk Valley Coal Co.* v. *Third National Bank,* 157 Ky. 617, 163 S. W. 766, the defendant had made a note to one H. C. Thompson to be used by the latter for a specific purpose. H. C. Thompson, without any authority from the defendant, pledged the note along with other collateral to the plaintiff bank. In reply to the defendant's effort to require plaintiff to exhaust the other collateral before proceeding upon this note, the court says (p. 767) : "There is no merit in the contention that defendants are entitled to have plaintiff exhaust the other collateral before enforcing the note sued on. It is well settled that the maker of a collateral note cannot compel the pledgee, before enforcing it, to exhaust other securities held by him for the principal debt, even though the maker has a set-off available against the pledgor. 31 Cyc. 887; Dallemand v. Nova Scotia Bank, 54 Ill. App. 600; Haas v. Bank of Commerce, 41 Neb. 754, 60 N. W. 85." See also *Hanesley* v. *National Park Bank,* 147 Ga. 96, 92 S. E. 879; *Third National Bank* v. *Harrison,* 10 Fed. 243; *People's State Bank* v. *Penello,* 210 Pac. (Cal.) 432.

For the foregoing reasons the exceptions are overruled.

*I. M. Stainback* (*Kemp & Stainback* and *Jean Vaughan* on the brief) for plaintiff.

*C. B. Dwight* (also on the briefs) for defendant.