COLLECTOR OF TAXES OF BOSTON *vs.* NEW ENGLAND TRUST
COMPANY.

COLLECTOR OF TAXES OF COHASSET *vs.* SAME.

Suffolk.   Norfolk.   March 23, 1915. — May 25, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Assignment,* For benefit of creditors.   *Tax,* Assessment.   *Words,* "Business,"
"Place of business."

An instrument of trust provided that, because of the pendency in the United
States Supreme Court of two suits in which no supersedeas bonds had been
given, "and for other reasons," the grantor sold and conveyed to the trustee all
of his property, excepting real estate in Massachusetts exempt from being taken
on execution and certain leasehold and other interests which the trustee might
think it undesirable to accept and a power of appointment given the grantor
under his father's will, and gave to the trustee full power to hold the property,
to sell it when in his discretion it was good business judgment to do so to fulfil
certain business obligations of the creditor, and, at the termination of the
pending litigation, to convert the property into cash and to distribute it sub-
stantially in accordance with the provisions of the national bankruptcy act to
such creditors as assented to the provisions of the trust, paying the balance, if
any, to the grantor.   There also were provisions that, in case of bankruptcy pro-
ceedings within four months, the trustee should surrender the property to the
trustee to be appointed therein, that creditors might assent to the terms within
sixty days and that, upon their assenting, they agreed not to prosecute by suit
or action any claim against the grantor.   All the creditors of the maker, includ-
ing the plaintiff in the two suits in the United States Supreme Court, signed
their assent to the instrument.   Their claims amounted to about $2,183,000.
The property transferred to the trustee amounted to about $1,900,000.   *Held,*
that the instrument was an assignment for the benefit of creditors and was
not a mortgage or pledge.

Neither the validity nor the character of an assignment for the benefit of creditors
is affected by a failure to record it in accordance with the requirements of
R. L. c. 147, §§ 21, 22.

Where one who, previous to March, 1910, had been an organizer of and officer
in many corporations and had maintained a suite of offices in Boston while
residing in Cohasset, at that time made an assignment for the benefit of his
creditors, severed his connection with many of the corporations but continued
to be president of two of the smaller ones and transacted business in regard to
them in an office in Boston, kept his own name on the door of the office, in the
directory of the building where the office was and in the telephone directory,
attended to business for his wife in that office, paid a part of the rent of the
office, had a private secretary whose salary was paid by his wife and came to
the office once a week and there transacted all the business that he had to

transact, there being "no changes in the conditions" for three years after the assignment from what they were before except that the assignor became less active than before, it was *held*, that the assignor had a place of business within the meaning of St. 1909, c. 490, Part I, § 23, cl. 8, which determined where the property in the hands of the assignee should be assessed for taxation, and that such place of business was Boston.

CARROLL, J. These two actions are brought, one by the tax collector of the city of Boston and one by the tax collector of the town of Cohasset, to recover a tax assessed by the assessors of the respective municipalities as of April 1, 1913, on certain personal property held by the defendant under an indenture of trust, dated March 18, 1910, given by Albert S. Bigelow, a resident of Cohasset, under which instrument the defendant has been acting continuously from the time of the delivery to it of such property on some date between March 18, 1910, and April 15, 1910, to the time of the trial in the Superior Court. The question involved is whether the personal property in the possession of the defendant trust company under the indenture was taxable by the city of Boston or by the town of Cohasset on April 1, 1913.

The issues raised by the pleadings and at the hearing * were

" (1) Whether said indenture was an assignment for the benefit of creditors within St. 1909, c. 490, Part I, § 23, cl. 8.

" (2) If said indenture was an assignment within said statute, then whether the controlling date to which the inquiry as to the principal place of business of the assignor relates, is the date of said assignment or April 1, 1913, the date on which the liability of said property to tax for the year 1913 attached; and

" (3) Whether said Albert S. Bigelow had his principal place of business in Boston within the meaning of said statute on the date which the court shall deem controlling."

The St. of 1909, c. 490, Part I, § 23, cl. 8, is as follows:

"Eighth, Personal property taxable as such, held in trust by assignees under the insolvent law or under any bankrupt law or any voluntary assignment for the benefit of creditors, shall be assessed to such assignees in the place where the insolvent, bankrupt or assignor had his principal place of business, if any; otherwise in the place of his residence."

---

* By *Morton*, J., without a jury, who found for the plaintiff in the first action in the sum of $26,123.36, and for the defendant in the second action.

1. The deed of trust was dated March 18, 1910, and was between Albert S. Bigelow, as maker, The New England Trust Company, as trustee, and the corporations, firms and individuals who became parties thereto as beneficiaries. It provided that, whereas two suits, brought against the maker by the Old Dominion Copper Mining and Smelting Company, had gone to final decrees in the Supreme Judicial Court of Massachusetts, and the two writs of error issued therein had been entered in the Supreme Court of the United States, and in such writs no supersedeas bonds had been given, "therefore, and for other reasons, this Indenture of Trust is made advisable."

It purported to sell and assign to the trustee all of the property and estate of the maker, except property in Massachusetts which would be exempt from attachment or from being taken on execution, and excepting leaseholds, or other interests, which the trustee might deem it undesirable to accept, and also excepting the power of appointment given to the maker by the will of his father.

The value of the assets which passed to the trustee under the indenture was approximately $1,938,183.72. The sum awarded by the decrees in the two suits of the Old Dominion Copper Mining and Smelting Company was $2,182,839.46, and the claims of the other creditors approximated $165,500. All of Bigelow's creditors, including the Old Dominion Copper Mining and Smelting Company, assented to the assignment.

The deed gave to the trustee full power to hold the property, with the right to sell the same when, in the opinion of the trustee, it was good business judgment so to do, to carry out the maker's obligations under certain underwriting agreements, and, at the termination of the pending litigation above referred to, to convert the property into cash and distribute it to the assenting creditors substantially in accordance with the provisions of the bankruptcy act, the remainder, if any, to be paid to the assignor, no distribution being authorized until all proceedings under the litigation were terminated, final judgments or decrees entered against the maker; the creditors agreeing not to bring or prosecute any suit or action against the maker or the trustee on account of any existing claim against the maker.

It also provided, in case of bankruptcy proceedings within four

months from its date, that the trustee thereunder was to surrender the property to the trustee in bankruptcy, and that all creditors might become parties thereto by signifying their assent within sixty days.

There were also many other sections in the agreement providing for the rights of the respective parties.

"Assignments for the benefit of creditors are transfers . . . by debtors, of some or all of their property to an assignee or assignees, in trust to apply the same, or the proceeds thereof, to the payment of some or all of their debts, and to return the surplus, if any, to the debtor." Burrill on Assignments, c. 1, § 2.

Considering all the stipulations and the whole purpose of the instrument, we are satisfied that it was intended between the parties to be and was under the St. of 1909 for purposes of taxation an assignment for the benefit of creditors, and it was not, as argued by the plaintiff, the collector for the town of Cohasset, a transaction in the nature of a mortgage or pledge. By its terms it transferred to the assignee, as trustee, for the benefit of the maker's creditors, the control, ownership and title of all the maker's property and estate, and the possession of the same was delivered to the trustee for the purposes of the trust.

Such a conveyance is different from a pledge, or from an instrument by which property is held merely as security or a mortgage where the title passes "defeasible on the performance of a condition subsequent." *Weeks* v. *Baker*, 152 Mass. 20. *Harding* v. *Eldridge*, 186 Mass. 39, 41.

Nor is the deed any less an assignment for the benefit of creditors, at least for purposes of taxation, under the statute above referred to, because it is provided in the deed that no distribution thereunder shall be authorized until the litigation between the maker and the Old Dominion Copper Mining and Smelting Company "shall be finally completed and final judgments or decrees entered against the Maker."

The collector for the town of Cohasset also insists that because the instrument was not recorded and notice was not given to creditors under R. L. c. 147, §§ 21, 22, it is not an assignment for the benefit of the creditors.

This statute does not affect the validity of the deed of assign-

ment, nor does it cease to be an assignment for the benefit of creditors because the statute was not complied with. The failure to comply with these sections of the statute simply takes away from the assignee certain protection therein given him in the event of subsequent insolvency. See *Hoague* v. *Cumner,* 187 Mass. 296.

2. The St. of 1909, c. 490, Part I, § 23, cl. 8, provides that personal property held under an assignment for the benefit of creditors shall be assessed to the assignee in the place where the assignor had his principal place of business, if any; otherwise in the place of his residence.

"Business" is "anything which occupies the time and attention and labour of a man for the purpose of profit. . . . It is a word of extensive use and indefinite signification." Jessel, M. R., in *Smith* v. *Anderson,* 15 Ch. D. 247, at page 258. And a person has a place of business where he "has an office or known or settled place of business for the transaction of his monied concerns." *Sussex Bank* v. *Baldwin,* 2 Harrison, 487, 488. A person may have a place of business which is not exclusively his own, when he is allowed to occupy the office of another where he receives business calls and directs them to be made. *West* v. *Brown,* 6 Ohio St. 542.

Albert S. Bigelow was a resident of Cohasset and had no place of business, either at the date of the assignment or in April, 1913, unless he had such a place of business in Boston. There was much evidence before the court bearing on the question, and it was found that Albert S. Bigelow had a place of business in the city of Boston on March 18, 1910, and also on April 1, 1913.

Briefly stated, the evidence shows that for many years before the date of the assignment Mr. Bigelow had a suite of offices, consisting of five rooms in the Sears Building in Boston. He had organized many corporations and was an officer in many of them; he transacted practically all of the business of these corporations as well as his own personal and financial business in these offices. In the summer of 1909 he severed his connection with many of the corporations, but continued to be president of two of the smaller companies and continued to conduct his business at this place. He came to his office regularly, except when he

took a vacation, and this continued to the time of the assignment. Mr. Bigelow paid from the offices the expenses of a mining property in which he was interested. His name was on the door, it appeared in the building directory and in the telephone book; and to April 1, 1913, he still occupied these offices. He remained an officer of one or two corporations and continued to look after the business of Mrs. Bigelow; he had a desk in one room and a private desk and safe in another room; a portion of the rent was charged to him; he had a private secretary in the office, paid by Mrs. Bigelow; he there transacted all the business he had to do, consulted with his attorneys, had business dealings with the attorneys of the defendant trust company, bought, sold and managed the property of Mrs. Bigelow, received correspondence in connection with his personal and financial affairs, interviewed people there in reference to business, and, as stated by his secretary, "there were no changes in the conditions between March, 1910, and April, 1913, except that after the summer of 1909, Mr. Bigelow ceased to manage the majority of said corporations, and again after the assignment, Mr. Bigelow did less than before."

We think, under these circumstances, Mr. Bigelow had a place of business in Boston in March, 1910, when the assignment was executed; that he continued to have a place of business in Boston up to and including April 1, 1913, and therefore the tax assessed as of April 1, 1913, by the assessors of the city of Boston upon the personal property held by the New England Trust Company as assignee under the assignment for the benefit of the creditors of Albert S. Bigelow, was assessed legally; and the presiding justice was fully justified in so finding. There is nothing in the case of *Hanley* v. *Eastern Steamship Corp. ante*, 125, which conflicts with what is here decided.

In view of what we have said it becomes unnecessary to consider the second question, that is to say, whether the controlling date was the date of the assignment, or April 1, 1913.

In accordance with the terms of the report, in the first case, to wit, *Collector of Taxes of Boston* v. *New England Trust Co.*, judgment is to be entered for the plaintiff in the sum of $26,123.36, with interest from November 1, 1913; and in the second case, *Col-*

*lector of Taxes of Cohasset* v. *New England Trust Co.,* judgment is to be entered for the defendant.

*So ordered.*

· *J. P. Lyons,* for the plaintiff in the first case, was not called upon.

*A. P. Worthen,* for the plaintiff in the second case.

*B. E. Eames,* for the defendant.